**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MA-CHINES CORPORATION, Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court, S. D. New York.

Sept. 25, 1974.

Raymond M. Carlson, Joseph H. Widmar, John H. Earle, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff.

Cravath, Swaine & Moore by Frederick A. O. Schwarz, Jr., New York City, for defendant.

## OPINION

EDELSTEIN, Chief Judge:

By motion dated May 21, 1973, International Business Machines Corporation (IBM) moved pursuant to Rules 33, 34 and 37 of the Federal Rules of Civil Procedure for an order commanding plaintiff to account for its alleged destruction of documents in violation of Pretrial Order No. 1 (PTO No. 1). On March 17, 1972 this court entered PTO No. 1 (dated March 16, 1972) mandating that both parties preserve and secure from destruction all documents relating to electronic data processing until further order of the court. On April 3, 1972, the court entered an order (dated March 30, 1972) that amended PTO No. 1 by eliminating certain categories of documents from its all encompassing sweep.[1]

Defendant contends that various agencies of the Government have destroyed

1. The order amending PTO No. 1 provided as follows:

WHEREAS both plaintiff and defendant undertake that they have taken immediate steps to comply with Pretrial Order No. 1 entered by this Court on March 16, 1972; and

WHEREAS both plaintiff and defendant have ascertained from their operating personnel that certain bulky, intermediate, subsidiary and underlying documents, records and recordings prepared in the course of routine business operations are produced and normally destroyed in such day-to-day volume that their continued retention will endanger and prevent the continuation of the normal and efficient business activities of plaintiff and defendant; and

WHEREAS certain types of such records are identifiable by category as hereinafter set forth and may be encompassed within Pretrial Order No. 1, but both the parties to this action agree that their destruction according to normal business procedures will not prejudice either party to this lawsuit;

IT IS HEREBY ORDERED, UPON CONSENT OF THE PARTIES, THAT THE FOLLOWING ITEMS MAY BE FORTHWITH EXEMPTED FROM PRETRIAL ORDER NO. 1:

1. *Magnetic tapes or disks used in the development of computer programs*
   EXCEPT THAT: tapes or disks constituting a finished programming product are to remain subject to the Court's Pretrial Order No. 1.
2. *Magnetic tapes or disks used only as an interim step in a data processing operation.*
3. *Ancillary/auxilliary tapes or disks used in data processing operations*, provided the data can be recreated from source records.
4. *Magnetic Tapes and Disks Being Updated in the Normal Course of Data Processing Operations*
   EXCEPT THAT: the latest version of any such tape or disk which is no longer being updated shall remain subject to the Court's Pretrial Order No. 1.
5. *Any magnetic tapes or disks used in data processing operations*, provided the data on

EDP related documents both prior to and after the entry of PTO No. 1. With respect to the post-PTO No. 1 time period, defendant asserts that the alleged destruction was in clear contravention of the order. As to the pre-PTO No. 1 destruction, defendant contends that plaintiff was obligated to preserve all EDP related documents in order to respond adequately to its discovery requests under Rules 33 and 34.[2]

In a broad based attack on the adequacy of the Government's efforts to implement PTO No. 1, IBM charged that numerous Government employees involved with electronic data processing have testified at depositions that they were unaware of PTO No. 1, "that no special steps have been taken to preserve EDP documents, that they treat EDP files no differently than other files, and

the tape or disk has been completely printed out.

6. *Tabulating Cards Used Only as an Interim Step in a Data Processing Operation*

7. *Tabulating Cards Used in Programming, Logic, Test and Diagnostic Operations*

8. [deleted from final order].

9. *Copies of Printed Material Prepared by Third Parties for General Public Distribution*
   EXCEPT THAT: any copy to which information has been added must be retained subject to the Court's Pretrial Order No. 1.

We consent to and request the making and entry of the foregoing Order.

2. Defendant asserts that plaintiff was obligated to preserve EDP documents prior to the entry of PTO No. 1. IBM contends this obligation arose from the following facts:
   1. In October 1970 IBM served a document demand upon the Government pursuant to Rule 34 of the Federal Rules of Civil Procedure. The Government filed a formal Response, also pursuant to Rule 34, in which it (i) admitted that its documents could be "useful to the defendant in preparing its defense" and (ii) agreed to produce its files relating to the "procurement and use" of EDP products and services. Despite that Response, the Government eventually admitted, after repeated refusals to discuss the subject, that it continued to destroy such procurement and use files.

that EDP documents are being destroyed in the ordinary course." Specifically, through affidavits submitted by various IBM attorneys and employees, defendant asserted that these charges were applicable to numerous Government agencies including the FBI; the Frankford Arsenal (part of the Army Material Command); NASA's Goddard and Kennedy Space Flight Centers; the Bonneville Power Administration of the Department of the Interior; the Naval Ship Engineering Center; the Air Force Strategic Air Command; the Army Management Information Systems Directorate Office; the Defense Communications Agency; the Defense Intelligence Agency; and the General Services Administration.

The relief requested by defendant for both the pre- and post- PTO No. 1 peri-

2. In December 1969 this Court (Van Pelt Bryan, J.) overruled the Government's objection to answering defendant's interrogatory 5(e) relating to the Government's installations of EDP equipment and ordered that answers be furnished. Answering this interrogatory necessarily also required reference to certain documents; plaintiff's trial counsel also subsequently agreed that other documents sought by defendant would be flagged and set aside if they were in files that had to be examined in the course of answering the interrogatory. It now appears, however, that nothing was done to preserve any of these documents either. (Indeed, it now appears that plaintiff's counsel did not even tell various major agencies of the Government that they would be required to answer the interrogatory for more than a year and a half after the court ordered it answered.)

3. Finally, to the extent that the Government itself sought selected information or documents from particular Governmental offices in connection with its investigation or prosecution of this action, the Government became obligated thereby to require the preservation of other related information so that the defendant could ultimately have an opportunity to obtain information helpful to it to rebut and overcome anything which the Government had selectively obtained for its own use in this action.
Defendant's Motion to Compel Plaintiff to Account for its Destruction of Documents at 2–3.

ods is set out in detail in the margin.[3] Generally, defendant asks that the Government be required to provide a detailed account of all alleged destruction prior to March 16, 1972. As to the post-

PTO No. 1 time frame, IBM demands that plaintiff should be required to (a) disclose all steps taken to implement PTO No. 1, (b) provide information regarding what was destroyed, and (c)

3. The relief requested is as follows:

RELIEF REQUESTED

Upon the foregoing, as further spelled out in the accompanying affidavits and exhibits, defendant moves this Court as follows:

*Relief Re Destruction Prior to March 16, 1972*

1. For a finding that the destruction by the Government of the documents and from the dates set forth below constituted a violation of the Government's obligations:

(a) destruction of documents relating to procurement or use of EDP products or services—from October 13, 1970 (the date of defendant's document demand, as to which plaintiff filed its Response on November 12, 1970);

(b) destruction of documents relevant to answering defendant's interrogatory 5(e)—from December 19, 1969 (the date this Court ordered the interrogatory answered);

(c) destruction of other documents requested by defendant from the files which had to be reviewed in order to answer said interrogatory—from January 7, 1970 (the date defendant made said request);

(d) destruction of any documents relating to electronic data processing in Government offices from which the plaintiff sought from that office any information or documents for aid in its investigation leading up to this case or in its prosecution of it—from the date plaintiff so sought the information or documents.

2. For a further finding that such destruction was prejudicial to defendant's substantive rights (particularly in light of the Government's admission that its documents could be useful to the defendant's defense) and that the Government should be required to account for such destruction so as to enable the defendant to seek to overcome that prejudice and, to accomplish that, for an Order that plaintiff be required to furnish to defendant and to the Court within 60 days, the following in the form of answers sworn to by the knowledgeable officials of the various Government offices with respect to the various files and from the various dates specified in paragraphs 1(a)– (d) above, separately for each such subparagraph:

(a) Name of office and person or group with respect to which documents were destroyed (when files were sent to storage and the destruction was performed at the storage

location this answer should nevertheless be supplied by the office which originally generated the documents, noting, where applicable, that the destruction took place at the storage location);

(b) date[s] on which documents were destroyed (including a statement that such destruction was continuous if that be the case), together with the volume destroyed;

(c) type and content of the files destroyed, including all information that is available with respect to the (i) person or office whose files were destroyed; (ii) the content of the documents (file folder title, subject matter, date of documents or other information relating to the contents and available either in documentary form or by interview).

*Relief Re Destruction After March 16, 1972*

3. For a finding that certain Government agencies have not been complying with Pretrial Order No. 1 and that this has resulted in prejudice to the defendant and for a further finding that a prima facie case has been made that the Government did not in general take sufficient steps to ensure the preservation of documents pursuant to Pretrial Order No. 1 and therefore for an order that

(a) plaintiff shall forthwith take effective steps to cause all Governmental employees in possession, custody or control of documents covered by Pretrial Order No. 1 to preserve them pursuant to the terms of the Order;

(b) within 20 days, plaintiff shall provide a sworn statement from each Government location and office containing material responsive to Pretrial Order No. 1 (including any storage location) indicating what was done prior to the date of this motion to inform persons in that location or office with documents covered by Pretrial Order No. 1 that such documents must be preserved and indicating whether any such documents have been destroyed;

(c) within 60 days, for any location or office where all such persons were not so informed and for any location or office where such documents have been destroyed plaintiff shall supply the information required by paragraphs 2(a)–(c) above.

Defendant's Motion to Compel Plaintiff to Account for its Destruction of Documents at 3–6.

take immediate steps to insure that violations of the order cease.

As to the alleged destruction prior to PTO No 1, the Government asserts that it has preserved all documents "which relate in any way to this lawsuit" even prior to the institution of this litigation. The Department of Justice acknowledged, however, that before the entry of PTO No. 1 it did not take any steps on a Government-wide basis to preserve all EDP related documents. It gives two reasons for this failure: (1) because IBM refused to provide the Antitrust Division with any specific production or preservation requests and (2) because it was under no obligation, "prior to the entry of PTO No. 1, to preserve all documents in the entire Federal establishment which relate in any way to electronic data processing."

On June 11, 1973 the court held oral argument on defendant's motion. Defendant provided more detailed information with respect to its destruction claims. The Government responded in a general way to most of defendant's charges. It became apparent, however, that plaintiff had not made a complete investigation of all of IBM's allegations and was unprepared to respond specifically to the numerous charges of destruction contained in defendant's original papers, supplemental affidavits and oral argument. Under the circumstances, especially since the court viewed the allegations of defendant as constituting very serious charges of Governmental misconduct, the court ordered the argument continued and requested that the Government respond with greater specificity to IBM's allegations. Continuation of the argument was scheduled for June 28, 1973.

During the intervening two and one half week period both sides submitted additional papers. Plaintiff filed a detailed response to each of the charges made by defendant, and IBM submitted supplemental affidavits and excerpts from depositions clarifying its earlier allegations and raising some additional charges. On the afternoon of June 28, 1973, argument on the instant motion continued. At the conclusion of the argument the court reserved decision on defendant's application. Thereafter, both sides continued to submit additional papers supporting their contentions. The last submission was received in early September 1973.

At the time the instant motion was made discovery in this case, which has been described as the largest discovery undertaking since the adoption of the Federal Rules of Civil Procedure, was at a relatively formative stage. Since that time the parties have engaged in a tremendous effort which has resulted in the solution of many serious and difficult problems. For example, on November 19, 1973 the court entered Pretrial Order No. 11, which embodied various agreements between the parties concerning the overall production of documents from a plethora of Government agencies to defendant.[4] The entry of this order clarified and limited the scope of IBM's document demands from the Government. Additionally, on May 31, 1974 the parties filed a stipulation resolving their dispute with respect to the adequacy of plaintiff's response to IBM-Interrogatory 5(e).[5] This stipulation is particularly significant since a major part of defendant's contention that the Government was under an obligation to preserve all EDP documents even before the entry of PTO No. 1 rested on its contention that documents necessary to respond to Interrogatory 5(e) may have been destroyed. Moreover, on June 21, 1974, the parties entered into a stipulation of facts pertaining to documents of the National Security Agency (NSA), which were withheld from production to defendant for reasons of national

4. Pretrial Order No. 11 is reproduced in Appendix A.

5. The IBM Interrogatory 5(e) Stipulation is reproduced in Appendix B.

security.[6] Through a cooperative effort of the parties, NSA and the court, one of the most difficult document production problems encountered in this litigation was resolved. Lastly, again through the continued cooperation of the parties, the agency involved and the court, substantial progress has been made regarding document production from the Department of Commerce.[7] Consequently, between the time the instant motion was filed and the present, experience has demonstrated that many of the problems raised by IBM's allegations with respect to document destruction have been resolved by the efforts of all concerned. Accordingly, it is perhaps not unreasonable to conclude that the instant motion was premature.

In any event, with respect to that branch of defendant's motion pertaining to alleged document destruction prior to the entry of PTO No. 1, the court would like to make the following observations: (1) the Government had an obligation to preserve all documents specifically requested that were relevant to this litigation (It should be noted, however, that the Government contends that IBM's initial document demand lacked specificity.); (2) there has been no showing that this has not been done; (3) experience has demonstrated that plaintiff has been able to respond to defendant's discovery demands; and (4) there was no obligation for the Government to preserve every EDP related document, regardless of its relevancy, throughout the federal bureaucracy prior to the entry of PTO No. 1. Accordingly, defendant's motion to compel plaintiff to account for its alleged destruction of documents prior to March 16, 1972, the date on which PTO No. 1 became operative, is denied.

This disposition leaves open defendant's allegations regarding document destruction after the entry of PTO No. 1. It should be noted that in many instances the allegations of defendant pertain to destruction of documents shortly after the entry of PTO No. 1—*i. e.*, destruction of over 300 feet of documents reported at the Bonneville Power Administration (BPA) on March 23, 1972, less than a week after the effective date of PTO No. 1. Moreover, in many instances the conclusions of defendant concerning violations of PTO No. 1 were predicated on inferences drawn from the deposition testimony of various Government witnesses that they had never heard of PTO No. 1. For example, in paragraph 2(a) of the affidavit of Walter H. Beebe, which was made in support of the instant motion, it is alleged that Mr. Eugene B. Cortese, attorney for the Frankford Arsenal, in responding to inquiries regarding missing documents, stated that "he never heard of Pre-Trial Order No. 1, nor any instruction from the Department of Justice to implement that directive." In his affidavit, which is contained in Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion, Mr. Cortese responded as follows:

13. I now understand that Mr. Walter A. Beebe, an attorney for IBM has signed an Affidavit in which he states that I related to him that I never heard of Pre-Trial Order No. 1, or had any instructions from the Department of Justice concerning Pre-Trial Order No. 1. This statement could have very well been made by me and is easily explained in the following manner. I actually never did receive a copy of Pre-Trial Order No. 1, and as such, never received direction from the Justice Department citing same. However, I was aware that there was a Court Order to the affect (sic) that the Government was

---

6. The stipulation with respect to the NSA problem is reproduced in Appendix C. Of course, the actual stipulation of facts is a classified document and is therefore not included.

7. Reproduced in Appendix D is a letter from the Secretary of Commerce which demonstrated that substantial progress has been made with respect to this most difficult document production problem.

to make certain documents available to IBM, and I was also aware that none of the documents should be disposed of. I also knew as a matter of normal procedure, that no documents should be disposed of if, in fact they were the subject of a discovery proceeding

It seems clear that even if Mr. Cortese never knew that the document retention order was labeled PTO No. 1, he was aware that the court had entered some document preservation order. More importantly, it is also apparent that no EDP document was destroyed at the Frankford Arsenal. This discussion is aimed at demonstrating that although the allegations of defendant seemed compelling at first blush, upon further inquiry they were found to be without substance.

As outlined earlier defendant charged that PTO No. 1 violations occurred at a spate of Government agencies. The court has analyzed all claims and counterclaims with respect to the alleged violations of PTO No. 1 and has found all of them to be without merit. To deal with all of these claims would be an utterly useless exercise and a substantial waste of time. Accordingly, the court will review what it believes to be IBM's strongest claim.

As presented in the initial motion, IBM's strongest charge that PTO No. 1 was violated pertained to the claimed destruction at the Bonneville Power Administration (BPA). Three affidavits submitted in support of IBM's motions claimed massive violations of PTO No. 1 at BPA. First, in paragraph 2(c) of his affidavit of May 21, 1973, Walter H. Beebe, Esq., asserted:

At Bonneville Power Authority, the first agency to produce documents dated later than the March 16, 1972, Pre-Trial Order, the employees had never heard of Pre-Trial Order No. 1 and regular destruction (such as the over 300 feet reported destroyed on March 23, 1972) continues, as shown in the accompanying Lerner affidavit.

Secondly, Irwin H. Lerner, an IBM in-house attorney working on this litigation, averred that he attended a meeting at BPA on April 25, 1973 to arrange for the commencement of document production pursuant to Pretrial Order No. 9. He further stated that eighteen [8]

---

8. The eighteen individuals included:

| | |
|---|---|
| Steven M. Woghin | —Department of Justice |
| Omar W. Halvorson | —Assistant Regional Solicitor, Department of Interior |
| Douglas A. Hanson | —Assistant Administrator for Administrative Management, Bonneville Power Administration |
| Hideto H. Tomita | —Management Analysis Officer, Bonneville Power Administration |
| R. D. Hitts | —Chief, Branch of Finance and Accounts, Bonneville Power Administration |
| Dr. Margaret B. Lambie | —Computer Applications Management (CAM) Board Staff, Bonneville Power Administration |
| Scott McDuffie | —Computer Applications Staff, Division of Engineering & Contracts, Bonneville Power Administration |
| R. Schreiner | —Branch of Materials & Procurement, Division of Engineering and Contracts, Bonneville Power Administration |
| D. Bentley | —Branch of Contract Engineering, Division of Engineering and Contracts, Bonneville Power Administration |

government employees attended this meeting including a member of plaintiff's trial staff for this case and the Assistant Regional Solicitor for the Department of Interior, the agency under whose aegis BPA falls. The other attendees were all employed at BPA in a capacity related to electronic data processing. In paragraph 3 of his affidavit, Mr. Lerner asserted the following:

> During the discussions regarding the availability of EDP files, Mr. Tomita [Management Analysis Officer at BPA] stated that the Bonneville Power Administration disposes of its files in accordance with its normal records retention practices. I asked if that Administration took any different precautions to hold and protect documents relating to electronic data processing or services, as ordered under Pretrial Order No. 1. He replied that he had never heard of any such requirement. Furthermore, no other member of that Administration at the meeting indicated knowledge of Pretrial Order No. 1 or its requirements when asked about that by me.

Thirdly, defendant submitted the affidavit of William F. Barbazette, an IBM employee working full time for IBM's counsel in connection with this litigation. Mr. Barbazette charged that on April 30, 1973 he discovered a memorandum dated March 23, 1972 (seven days after PTO No. 1 was entered), which indicated that during a program called "Operation Clean-Up" 372 linear feet of documents from the Computer Operations Branch were destroyed.

In its Supplemental Memorandum in Opposition to Defendant's Motion, plaintiff provided affidavits and documents which establish that IBM's charges are without merit.

The first affidavit submitted by plaintiff was that of Steven M. Woghin, Esq., a member of the Government's trial staff for this litigation. Mr. Woghin was given direct responsibility to investigate defendant's charges with respect to BPA. After he reviewed in detail all his efforts with respect to BPA, Mr. Woghin refuted allegations made in the Lerner affidavit that no one at BPA had heard of PTO No. 1.

The second affidavit submitted by the Government was that of Frank E. Rivera, Staff Assistant to the Computer Application Management (CAM) Board of BPA. During the Spring of 1972, Mr. Rivera served as Chairman of the CAM Board at BPA. In this capacity he averred that he received two communications from the Department of Justice with respect to EDP documents. The first communication was labelled "Justice Department, Request for Information—United States v. International Business Machines Corporation." This was a request pursuant to Pretrial Order No. 3 alerting BPA that IBM was going to commence document production at BPA. Mr. Rivera stated that "[a]lthough there was no explicit request that ADP [Automated or Automatic Data Processing, which for our purposes is synonymous with EDP] documents be preserved, the CAM Board decided that precautionary measures to preserve files were nonetheless called for." The second communication from the Department of Justice received by Mr. Rivera was titled "Retention of Records Relating to Electronic Data Processing, United States v. International Business Machines Corporation." Rivera averred that this document was received by his office on April 18, 1972. Although this was the first time that the document preservation mandate of PTO No. 1 was communicated to BPA, Mr. Rivera indicated, as outlined above, that the CAM Board instituted an EDP document retention policy upon receipt of the prior order.

In specific response to defendant's charges that EDP documents covered by PTO No. 1 were destroyed during the so-called "Operation Clean-Up" at BPA, plaintiff offered the affidavit of George

A. Dubinski, Chief of the Branch of Computer Operations at BPA. Mr. Dubinski indicated the 372 linear feet of material destroyed during "Operation Clean-Up" included "all material destroyed since July 1, 1971." Therefore, the implication that this entire destruction took place after the entry of PTO No. 1 is incorrect. In reviewing some of the material included in this destruction, as outlined in Mr. Dubinski's affidavit, it appears to the court that much of the material destroyed came within the exceptions to PTO No. 1 contained in the April 3, 1972 order of the court. Additionally, plaintiff offered the affidavit of R. Scott McDuffie, Assistant to the Chief Engineer and the Head of the Computer Applications Staff in the Chief Engineer's office at BPA. In paragraph four of his affidavit Mr. McDuffie asserted as follows:

> 4. So far as I am aware the Engineering Division complied with the requirements for preservation of records relating to electronic data processing or ADP matters fully and completely and so far as I am aware no documents or records were destroyed in contravention of "Pre-Trial Order No. 1."

From the foregoing discussion and all of the affidavits, exhibits and other materials filed by both parties, it appears clear that defendant's broad and sweeping allegations have been demonstrated to be without substance.

Accordingly, defendant's motion is denied in all respects.

So ordered.

### PRETRIAL ORDER NO. 11

Defendant having filed a Request for Documents—Set I on October 27, 1970, and the Court having entered Pretrial Orders Nos. 2 and 3 on March 21, 1972,

---

1. Includes predecessor and successor organizations.

2. Includes pre-1961 documents.

as amended by Order dated May 10, 1972, and supplemented by Order dated November 21, 1972, and Pretrial Order No. 9 on March 26, 1973, and defendant desiring plaintiff to produce additional documents and plaintiff desiring to limit such production and both parties desiring to expedite future document production,

It is hereby ordered that, subject to the provisions of Pretrial Order No. 8, the procedures set forth herein shall apply to all document discovery hereafter taken by defendant of plaintiff. November 19, 1973.

### DOCUMENTS TO BE PRODUCED BY PLAINTIFF

In the interest of expedition, the parties have agreed to limit document production from Government agencies (other than that already in progress or that to be undertaken in connection with limited specific requests) to that described herein.

Document production within the terms of this order is divided into two groups.

A. The first group listed below consists of agencies where plaintiff is to produce all documents related to electronic data processing (i. e., all documents demanded in defendant's document demand which is Schedule 1 attached hereto with the exception of periodic records processed by electronic data processing equipment, the subject matter of which is not related to electronic data processing).

AGENCIES [1] (AND PARTS OF AGENCIES) FROM WHICH PLAINTIFF SHALL PRODUCE DOCUMENTS CALLED FOR BY SCHEDULE 1

General Services Administration [2]

General Accounting Office [3]

---

3. It is plaintiff's position that this agency must be subpoenaed. Plaintiff's counsel are attempting to obtain agreement from GAO to permit document discovery and inspection.

Directorate of Data Automation of the Comptroller of the Air Force [2]

Army Management Information Systems Directorate

Army Computer Systems Support and Evaluation Command

Information Systems Division of the Chief of Naval Operations

Congressional Research Service of the Library of Congress [4]

Veterans Administration (Washington metropolitan area only)

Navy Tactical Automated Data Systems Office

Army Materiel Command (Headquarters only)

Defense Communications Agency

Assistant Secretary for Science and Technology; Assistant Secretary for Economic Affairs; Assistant Secretary for Domestic and International Affairs; and the Social and Economic Statistics Administration of the Department of Commerce (including Bureau of the Census and Office of Business Economics) [5]

U. S. Senate, Subcommittee on Antitrust and Monopoly of the Committee on the Judiciary [4]

House of Representatives, Committee on Government Operations [4]

U. S. Congress, Joint Economic Committee, Subcommittee on Practices and Economy in Government [4]

Assistant Secretary of Defense (Comptroller)

Assistant Secretary of the Army (Financial Management)

Environmental Protection Agency (Washington metropolitan area only)

Office of Science and Technology and Office of Telecommunications Policy

of the Executive Office of the President

Federal Trade Commission (Washington metropolitan area only)

Federal Communications Commission (Washington metropolitan area only)

Department of Agriculture (Washington metropolitan area only)

Department of State (Washington metropolitan area only)

Assistant Secretary of the Navy (Financial Management)

Defense Intelligence Agency (Headquarters only)

B. The second group of agencies listed below consists of agencies where the parties have agreed to limit production under Schedule 1 hereto to:

a. EDP documents of the person or persons chiefly responsible for EDP procurements, operations or policy (it is recognized that sometimes this will consist of department documents as well as the person's personal documents [6] depending on the individual and the agency), and

b. EDP personal documents [6] of certain specifically designated persons (to the extent not produced pursuant to subparagraph a. above); such persons are designated by agency in the list of agencies from which plaintiff shall produce limited EDP documents, and

c. other documents relating to the bid, procurement, study, use, consideration or evaluation of EDP products or services, or of the suppliers thereof, and

d. other documents related to the extent, or lack of competition in, or the changing nature and structure of, the EDP industry or any part thereof.

4. It is plaintiff's position that these entities must be subpoenaed. Counsel for the parties will attempt to obtain their agreement to permit document discovery and inspection.

5. Includes pre-1961 documents.

6. Personal documents include those EDP documents contained in such files as the desk files, day files, chronological files, correspondence files and subject files maintained by or for the person involved.

AGENCIES [7] (AND PARTS OF AGENCIES) FROM WHICH PLAINTIFF SHALL PRODUCE LIMITED EDP DOCUMENTS

Electronic Systems Division of the Air Force Systems Command

Naval Ship Engineering Center (including personal files of D. L. Ream, R. L. Britton)

Johns Hopkins University, Applied Physics Laboratory (including personal files of L. N. McClung)

Lawrence Livermore Laboratory (AEC) (including personal files of S. Fernbach, H. Briujnes, R. Van Holdt, W. Marron, M. Harrison) [8]

U. S. Postal Service (Headquarters; Regional Postmaster General, New York; Regional Postmaster General, Western; and Main Post Office, New York only) [9]

George C. Marshall Space Flight Center (NASA) (including personal files of W. S. Davis, H. K. Weidner, G. E. Daniel, E. D. Geissler, F. B. Moore, H. Hoelzer, K. L. Heimburg, D. Grau, G. G. Buckner)

Space and Missile Systems Organization of the Air Force Systems Command

Naval Electronics Systems Command (including personal files of K. T. Shelley)

Social Security Administration (including personal files of G. Friedman, J. Faye, G. Sheya, S. Kreps, R. M. Ball, W. E. Hanna) (Headquarters organization, Baltimore, Maryland only) [8]

Langley Research Center (NASA) (including personal files of P. F. Fuhrmeister, E. M. Cortright, H. B. Edwards, A. G. Swanson, R. Conway)

Oak Ridge National Laboratory (AEC) including personal files of H. P. Carter, J. G. Sullivan, Jr., C. L. Allen, B. E. Black)

Army Electronics Systems Command (including personal files of Gen. A. B. Crawford, Jr.) (Headquarters only)

Office of Naval Research and the Naval Research Laboratory (including personal files of A. B. Bligh, B. Wald) [8]

Joint Chiefs of Staff

Air Force Deputy Chief of Staff, Research and Development

Bettis Atomic Power Laboratory (AEC) (including personal files of B. H. Mount, J. J. Taylor, C. H. Glover)

Knolls Atomic Power Laboratory (AEC) (including personal files of E. Reilly, R. Ehrlich, J. Leggiero)

Lyndon B. Johnson Space Center (NASA) (including personal files of H. W. Tindall, Jr., J. C. Stokes, Jr., R. P. Parten, J. P. Mayer, E. F. Kranz, D. K. Slayton, C. H. Woodling, P. A. Whitback, J. L. Neal, A. E. Garrison, P. L. Carroll, G. F. Bailey, J. V. Piland, R. B. Boyd, Jr., A. J. Calio, P. W. Gast, M. A. Fagel, R. A. Gardiner, W. C. Bradford, R. S. Sawyer, R. G. Chilton, B. D. Bennett)

Assistant Secretary for Administration and Management of the Department of Health, Education and Welfare (including personal files of L. Williams)

Assistant Secretary for Administration, and the Internal Revenue Service of the Department of the Treasury (Washington metropolitan area only) [10]

Ogden Air Materiel Area, Hill AFB

Air Force Aerospace Defense Command (Headquarters only)

Defense Supply Agency (including personal files of R. F. Babler) (Defense ADPE Reutilization Office only)

7. Includes predecessor and successor organizations.

8. Includes pre-1961 documents.

9. It is plaintiff's position that this agency must be subpoenaed. Plaintiff's counsel are attempting to obtain agreement from U. S. Postal Service to permit document discovery and inspection.

10. Includes pre-1961 documents.

Naval Air Development Center (including personal files of H. G. Trembly)

Walter Reed Army Medical Center

Savannah River Plant (AEC) (including personal files of J. W. Wade, P. S. Tennant)

Air Force Deputy Chief of Staff, Programs and Resources (including personal files of Gen. Paschall, Gen. Gould, L. E. Berger) (Directorate of Command Control and Communications only)

Goddard Institute for Space Studies (NASA) (including personal files of R. Jastrow, A. Arking, J. A. Devries)

3-M Systems Branch of the Naval Materiel Command (including personal files of W. P. Emery)

Air Force Communications Service (Headquarters only)

Command Support Programs of the Chief of Naval Operations and the Navy Command Systems Support Activity (including personal files of C. P. Calo, J. E. Rebehn) (Assistant For Policy, Plans, Program and Budget; Intelligence Division; Fleet Readiness Liaison and Command Information Support Division; Reconnaissance Ocean Surveillance Division; and Command Control Support Division only)

Los Alamos Scientific Laboratory (AEC) (including personal files of B. G. Carlson, T. L. Jordan, E. A. Voorhees, W. J. Worlton, R. B. Lazarus, W. Wood)

Ames Research Center (NASA) (including personal files of H. M. Mark, C. A. Syvertson, L. G. Bright, T. R. Dines, M. W. Pirtle, L. Roberts, G. Goodwin)

U. S. Army Safeguard Systems Manager and the Safeguard Systems Command and Advanced Ballistic Missile Defense Agency

Air Force Data Automation Agency

Federal Aviation Administration

Jet Propulsion Laboratory (NASA) (including personal files of A. Finerman, J. P. Click, W. H. Bayley)

Naval Air Systems Command

Naval Ordnance Systems Command (including personal files of J. A. Ward)

Air Force Strategic Air Command (Headquarters only)

Eastern Test Range of the Air Force Systems Command (Headquarters only)

Air Force Cambridge Research Laboratory [11]

Headquarters, Air Force Systems Command

Naval Supply Systems Command [11]

Air Force Special Weapons Center

Arnold Engineering Center of the Air Force Systems Command

Rome Air Development Center of the Air Force Systems Command [11]

Armament Development and Test Center of the Air Force Systems Command

Air Force Logistics Command (Headquarters and Aerospace Guidance and Meteorology Center only)

U. S. Army Corps of Engineers (Headquarters only)

Army Ballistic Research Laboratories (including personal files of M. H. Weik, Jr.)

Army Tank/Automotive Command [12]

Air Force, Pacific Air Force [13]

Air Force Military Airlift Command [13]

Air Force North American Air Defense Command [13]

Army Aviation Systems Command [13]

Army Missile Command [13]

Army Mobility Equipment Command [13]

Army Munitions Command [13]

Army Test and Evaluation Command [13]

Army Weapons Command [13]

11. Includes pre-1961 documents.

12. Includes pre-1961 documents.

13. To be discovered only if necessary to supplement defendant's discovery of the preceding agencies.

Army Safeguard Logistics Command [13]
Air Force Tactical Air Command [13]

It is recognized by the parties that any attempt so to limit document production creates problems of definition. However, in the interest of expedition, the parties agree to use their best efforts to resolve those definitional problems. As is the present practice, prior to the commencement of document production to IBM at any agency listed in the second group below, a meeting between representatives of the Department of Justice, of IBM and of the agency involved shall take place at which the representatives of the agency and the Department of Justice shall identify the specific files which will be produced by the agency. Representatives of IBM and the Department of Justice shall then attempt to identify what further files or documents, if any, should be produced under the intent of the foregoing subparagraphs.

### SCHEDULE 1

*Definitions and Construction*

In interpreting each paragraph of this Schedule, the following definitions shall apply:

Competitor/Competition: Competitor and competition include past, present and potential competitors and competition.

Electronic Data Processing Product or Service: Electronic data processing product and service includes data processing products which are capable of electronically entering, receiving, storing, classifying, computing, converting, controlling, displaying, or recording data, or which are interconnected with any such product; and maintenance, programming, management, integration, support, testing, consulting, feasibility studies, systems analyses, systems design and development or education services

with respect to any such product or service.

Supplier of Any Electronic Data Processing Product or. Service: Supplier of any electronic data processing product or service includes each person, including plaintiff, which supplied or supplies or has offered to supply any electronic data processing product or service.

Documents requested herein shall be those responsive documents which are dated, issued or published from January 1, 1961, to December 31, 1972.[14]

Documents: Documents include letters, memoranda, notes, routing slips; telephone, TWX and other messages; flip charts, drafts, summaries, accounting books and records, listings, brochures, directives, regulations, studies, analysis, diaries, reports, forms, proposals, transcripts, minutes, exhibits, and all other writings and reproductions, whether typed, handwritten, printed, copied in computer readable form, or otherwise, and whether contained in storage files, central files, project files, contract files, user files, policy files, personal files, desk files, chronological files or elsewhere.

*Documents to be Produced*

1. · The following documents concerning any supplier of any electronic data processing product or service:

a. documents relating to the relative strengths or weaknesses of a supplier in any aspect of the electronic data processing industry, or the relative growth, profits or position of a supplier in such industry;

b. documents relating to the history of any such supplier in any aspect of the electronic data processing industry, including its entry or exit into any aspect of that industry and any

---

14. Unless otherwise ordered by the Court, plaintiff shall not introduce at trial documents obtained from government agencies prepared after December 31, 1972, provided however, that the Government may use those documents prepared after such date which were prepared in connection with this litigation and which relate to events prior to December 31, 1972.

barriers, deterrents (or the lack thereof) to such entry or exit.

2. All documents relating to any electronic data processing product or service which relate to:

a. any evaluation thereof, including the history, life span, availability, performance or specifications thereof;

b. any comparison involving or competition between any such product or service and any other product or service;

c. the number, kind or variety thereof available;

d. any substantial technological change in or cancellation or withdrawal of it.

3. All documents relating to the procurement or use of any electronic data processing product or service by any user including any governmental agency with respect to:

a. the organization, management, evaluation, selection, application, transfer or disposal of such product or service by such user;

b. the capacity or willingness, or lack thereof, of any such user to purchase or lease any such product or service from any supplier or to itself make, perform or supply any such product or service thereof instead of or in addition to its existing or then existing supplier;

c. the ability or capacity, or lack thereof, of any such user to use, evaluate or select, among, or to transfer or dispose of, any such product or service;

d. the prices, terms, or conditions for any electronic data processing product or service offered, negotiated, considered, sought, accepted or rejected by any such user.

4. All documents relating to any electronic data processing product or service or grouping thereof which show or tend to show the "market" or "segment" of commerce in which such products or services compete, including, but not limited to:

a. the existence of a definable "market", "submarket" or "part" of commerce in which such products or services compete;

b. the identity or nature of any product, service, supplier, purchaser or user therein;

c. the nature, extent or effectiveness of competition therein;

d. the relative or absolute position of any supplier therein;

e. any market power of any supplier of any electronic data processing product or service therein;

f. any acquisition or maintenance or any attempt or intent to acquire or maintain market power therein;

g. any possibility or probability that any supplier of any electronic data processing product or service might or may injure or destroy competition therein or acquire or maintain any market power therein;

h. any act, policy, practice, course of conduct, dealing or transaction which might accomplish or contribute to the injury or destruction of competition or the acquisition or maintenance of market power therein.

5. All documents which show any request or demand by any user, including any governmental agency, for prices or a pricing system whereby two or more electronic data processing products or services are included in a single price or are separately priced or are provided without charge.

6. All documents relating to any announcement by any supplier of a new electronic data processing product or service or a change or modification of a prior announced electronic data processing product or service including:

a. the time, timing or content of such announcement;

b. any change in or cancellation of any electronic data processing prod-

uct or service or any specification or capability thereof;

c. the satisfaction or failure to satisfy any test or other standard;

d. any manner in which such announcement was premature in terms of the design, development or availability of such product or service;

e. any disclosure or discussion of such product or service or request therefor prior to such announcement.

7. All documents which show the percentage return (whether profit or loss) on investment or on revenue realized or anticipated by any supplier of any electronic data processing product or service on any such product or service or the relationship any such return has or has not to any average or standard of comparison or to the return on any other data processing product or service.

8. All documents which show any giving or offering by any supplier of any electronic data processing product or service of any price, product, service, term, condition, financing arrangement, or other consideration to any user which is not offered or otherwise made available to all users.

9. All documents relating to requests by the government to suppliers or potential suppliers for information on the present and future availability of electronic data processing products or services.

## APPENDIX B

### IBM INTERROGATORY 5(e)

#### STIPULATION

Whereas, on February 20, 1969, IBM propounded Interrogatory 5(e) as part of IBM's Interrogatories Addressed to Plaintiff—Set I as follows:

"List (as of the end of each year), beginning in 1961, the manufacturer and model number (or other designation) of all computer systems owned or leased by the United States of America (including all agencies or departments) in the United States and list (i) the number of systems installed, (ii) the year of each installation, (iii) the sales price or monthly rental, (iv) whether the computer is 'digital' and, if not, what kind of computer it is, (v) whether, if digital, the computer is 'general purpose' or 'special purpose', (vi) the purposes for which the system is used and the functions it performs, and (vii) the manufacture and model number (or other designation) of all other systems which were bid, offered or otherwise considered in competition with that particular system for its installation."

and

Whereas, on July 31, 1969, plaintiff objected to Interrogatory 5(e); and

Whereas plaintiff's objection to Interrogatory 5(e) was overruled on December 19, 1969, by Judge Frederick van Pelt Bryan who entered an order compelling plaintiff to answer Interrogatory 5(e) in full; and

Whereas plaintiff responded to Interrogatory 5(e) on January 3, January 17, March 21 and August 29, 1972; and

Whereas, after reviewing plaintiff's response to Interrogatory 5(e), IBM determined that the response was inaccurate, incomplete and inconsistent and so informed plaintiff; and

Whereas IBM presented plaintiff with a draft of a motion, pursuant to Rules 33 and 37 of the Federal Rules of Civil Procedure, to compel plaintiff to correct its Interrogatory 5(e) response; and

Whereas, to avoid burdening the Court with the detail inherent in such a motion and to correct the alleged major deficiencies of plaintiff's response to IBM Interrogatory 5(e), the parties embarked on a joint program of interviewing certain Government agencies to ascertain the facts concerning the installation, value and use of EDP equipment at those agencies; and

Whereas IBM identified the responses of 68 agencies as containing errors which

would be representative of the alleged inaccuracies found in the responses of the remainder of the agencies; and

Whereas 55 of those 68 agencies have been interviewed by Department of Justice and IBM statistical personnel and their original responses have been amended and corrected; and

Whereas, to regularize plaintiff's Interrogatory 5(e) response, the parties have updated the response of the 68 agencies to the uniform date of December 31, 1972; and

Whereas, because of the constraints imposed by the Schedule for Completion of Discovery, the parties have agreed to correct certain other alleged deficiencies of plaintiff's Interrogatory 5(e) response by using estimates identified with an asterisk in the amended response; and

Whereas the parties have reviewed plaintiff's corrected and updated response to Interrogatory 5(e);

It is hereby stipulated that:

1. Attachment A hereto represents the amended response of plaintiff to IBM's Interrogatory 5(e) and supersedes the original response of plaintiff; and

2. Attachment B hereto represents the definitions and guidelines to be used in interpreting Attachment A hereto.

## APPENDIX C

### STIPULATION OF FACT

### NATIONAL SECURITY AGENCY

1. Whereas there was entered by the Court, on March 21, 1972, Pretrial Order No. 2, calling upon the National Security Agency (NSA), and other Government agencies, for the production to IBM of various categories of documents described in said Order;

2. Whereas the NSA declined to comply with said Order for reasons of national security:

3. Whereas the National Security Agency possesses information essential to the proper defense and adjudication of this action;

4. Whereas in order to make such information available to the Court in a manner consistent with the interests of national security, the parties have agreed to enter into a stipulation of certain facts relating to the National Security Agency;

It is hereby stipulated and agreed that the facts set forth in a stipulation captioned National Security Agency and dated June 21, 1974, which has for reasons of national security been filed in a secure respository at the United States District Court for the Southern District of New York separate from the Court file, shall be deemed true and correct for purposes of this action.

## APPENDIX D

Honorable David N. Edelstein
Chief Judge
United States District Court
Southern District of New York
U. S. Court House, Foley Square
New York, New York 10007

Re: United States v. International Business Machines Corporation, 69 Civ. 200 (S.D.N.Y.)

Dear Judge Edelstein:

The International Business Machines Corporation (IBM), defendant in the above litigation, has requested the disclosure of certain documents under Pretrial Order No. 11. Many of the documents requested contain information obtained by the Department of Commerce pursuant to provisions of the Export Control Act of 1949, as amended (50 U.S.C. App. § 2021 et seq.), the Export Administration Act of 1969, as amended (50 U.S.C. App. § 2401 et seq.), and the Defense Production Act of 1950, as amended (50 U.S.C. App. § 2061 et seq.). The Acts in question expressly require that such information be held in confidence and not be disclosed by this Department, absent a finding that the withholding of such information would be

contrary to the national interest (the Export Acts) or to the interests of national defense (the Defense Production Act). See 50 U.S.C. App. §§ 2026(c), 2406(c) and 2155(e). The Congress of the United States has repeatedly endorsed the strict nondisclosure policy consistently followed by the Department since the passage of these Acts. Among the documents sought by IBM that contain information obtained in the Department's administration of the Export Acts are *export license applications,* including supporting documents and papers, and *export licenses.* Defendant IBM has also sought the *Industrial Evaluation Board Report, 1970, Computers* and related documents. This report was prepared by the Department on the basis of information obtained under the Defense Production Act.

These documents are those described in the Defendant's Memorandum of June 26, 1974 to the Court (page 8) as falling in Categories (1) and (4).

In considering whether I am justified to determine under the above Acts that the withholding of the documents or information described above would be contrary to the national interest or to the interests of national defense, as appropriate, I have taken into account several factors.

The basic factor against my issuing such a determination is the mandate of Congress under the above Acts not to provide access to such information for any purposes other than those for which it was collected. I am mindful that this statutory privilege was not enacted for the benefit of government, but for the benefit of the persons supplying information to government. Thus, the disclosure of such information under the exceptional circumstances warranting a national interest' or national defense determination is not one to be arrived at lightly—whenever it appears expedient for government to do so. Moreover, the government has a long-term interest in not impairing its continued ability to collect reliable data from the business community. It is well established that all cooperation ceases when the persons supplying proprietary information are no longer confident that the collecting agency will not disclose it. The accuracy of the data obtained by the Department of Commerce is due to its scrupulous observance of confidentiality safeguards throughout the years.

On the other hand, I am aware of the considerable importance of the computer industry and other computer-related fields to this nation's economy and to our national defense. The impact which the outcome of this litigation may have on these industries is significant, and I therefore have no difficulty in finding that this litigation has an impact on the national interest and the national defense. In determining whether it would be contrary to the national interest and the interests of national defense to withhold the documents referred to above, I must weigh the degree of harm which disclosure may cause to persons who have supplied information under the above Acts, against any national interest and national defense objectives to be served by such disclosure.

Those companies which have been the subject of extensive discovery by defendant IBM during the pretrial proceedings could have been required by the defendant to provide such information directly. In fact, some of this information may already have been obtained by the defendant from such companies. Such companies having already been identified by the defendant and having had an opportunity to object and be heard by the Court, should not be unduly injured if information obtained from them is disclosed by the Department, provided such disclosure is strictly limited in terms of access to, and use of, the information.

In view of the above, pursuant to the authority contained under Section 6(c)

of the Export Control Act of 1949, as amended, Section 7(c) of the Export Administration Act of 1969, as amended, and Section 705(e) of the Defense Production Act of 1950, as amended, I hereby determine that the withholding of the information described above, if obtained from companies which were identified by the Defendant IBM and were subjected to extensive discovery in this litigation, would be contrary to the national interest and to the interests of national defense; provided however, that *access to such information* is restricted to the Court and to members of the active litigation team of each party and provided that *use of this information* by persons having access thereto, will be limited to these pretrial proceedings and subject to all of the protective safeguards contained in the Pretrial Orders of the Court. In the event that it should appear necessary to use any part of such information in the context of the trial, it is understood that before such use of the information is made, notice would be given to opposing counsel and the Court would rule on the propriety of such use.

I ask that the Court advise whether it will implement the above terms of disclosure, so that I may proceed with the production of the documents.

In order to further demonstrate our desire to cooperate with the Court to the greatest extent possible, the Department will contact any companies which have not been identified by the Defendant IBM to explain to these companies the importance of this litigation, the terms of the protective orders which may be issued by the Court, and to request them to consider authorizing the Department to provide the Court all the information obtained from them which falls into Categories (1) and (4) as described above.

Sincerely,
(s) Frederick B. Dent
Secretary of Commerce