266 N.J. Super. 222 (1993)
628 A.2d 1108
SONIA HIRSCH AND IRVING HIRSCH, PLAINTIFFS,
v.
GENERAL MOTORS CORPORATION, CADILLAC MOTOR CAR DIVISION, WELLS CADILLAC, JOHN DOE 1-20 (NAMES FICTITIOUS, TRUE NAMES REPRESENTING PRINCIPALS, PARTNERS AND OFFICERS OF WELLS CADILLAC, INC.), WARNOCK CADILLAC-OLDSMOBILE-BUICK-PONTIAC, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Argued March 12, 1993.
Decided May 4, 1993.
*228 Vincent A. Vitiello II, for plaintiffs Hirsch (Vitiello, Seltzer, Terkowitz & Vitiello, attorneys; Vincent A. Vitiello II on the brief).
William R. Bumgardner and Charles T. McCook, Jr., for defendant Warnock Cadillac Oldsmobile, Inc. (Bumgardner, Hardin & Ellis, attorneys; Charles T. McCook, Jr. on the brief).
Thomas V. Convery, for defendant General Motors Corporation (Morley, Cramer, Tansey, Haggerty & Fanning, attorneys).
CUMMIS, J.S.C.

I. Introduction
This is a case of first impression. State Farm Mutual Automobile Insurance Company (State Farm) brought this subrogation action on behalf of plaintiffs Sonia Hirsch and Irving Hirsch (plaintiffs). The causes of action alleged in plaintiffs' complaint arose from a fire that severely damaged plaintiffs' vehicle. Prior to filing the complaint, State Farm had experts inspect plaintiffs' vehicle and prepare a report. The vehicle was subsequently discarded.
Defendant Warnock Cadillac Oldsmobile, Inc. (Warnock) moves to dismiss plaintiffs' complaint for spoliation of evidence. Defendant *229 General Motors Corporation (General Motors) joins Warnock in its application, requesting that this court enter an order dismissing plaintiffs' complaint with prejudice against defendants General Motors and Warnock.
Plaintiffs object to defendants' motion. First, plaintiffs contend that New Jersey has not adopted California's independent spoliation tort approach. Second, plaintiffs contend that the loss of evidence was, at most, negligent. And under New Jersey law, civil litigants who negligently lose evidence are not barred from proceeding with their cases. Rather, upon completed discovery, and after the other party establishes substantial prejudice at an evidentiary hearing, the appropriate relief would be preclusion of the evidence. Third, plaintiffs contend that the out-of-state authorities cited in defendant Warnock's brief remedied spoliation by precluding evidence. Fourth, plaintiffs contend that spoliation of evidence is an affirmative defense, which was not specifically pleaded in defendants' respective answers. Fifth, plaintiffs contend that plaintiff Irving Hirsch notified defendants Warnock and General Motors of the fire involving their vehicle several weeks after its occurrence, and again by plaintiffs' insurer State Farm on April 3, 1991, and thus, defendants failed to timely request an inspection. Finally, plaintiffs contend that dismissal of the complaint, absent a court order to preserve the evidence, would be improper.
In reply, Warnock states that the evidence in this case was intentionally destroyed; the requisite intent level to establish intentional spoliation of evidence need not rise to a level of egregious conduct. In addition, General Motors states that, in light of the discovery already conducted, it is not premature to determine dismissal of plaintiffs' complaint (or preclusion of evidence).

II. Facts
Plaintiff Irving Hirsch purchased a 1988 Cadillac Sedan DeVille ("Cadillac") from Wells Cadillac on or about July 23, 1988. The Wells Cadillac dealership was later purchased by defendant Warnock. *230 Plaintiff Sonia Hirsch, plaintiff Irving Hirsch's wife, was the principal driver of the Cadillac, which was driven locally around West Orange, New Jersey, except for one trip to Atlantic City, New Jersey.
On July 9, 1990, Irving Hirsch brought the Cadillac to Warnock for air conditioning repair. The Cadillac's odometer reading was 14,899 miles. Warnock replaced an air conditioning hose, and upon authorization, Warnock also replaced the front brakes and cleaned and adjusted the rear brakes. John Pawlyk, the mechanic who performed the repairs, stated that the brake reservoir and lines were also inspected. (Depositions of John Pawlyk and William Hellman, p. 36, lines 15-23). The Cadillac had no other malfunctions or problems; the only prior maintenance services performed on the Cadillac were routine oil changes.
On August 31, 1990, the Cadillac was parked in the driveway of plaintiffs' home in West Orange, New Jersey. Plaintiff Irving Hirsch noticed flames emanating from the Cadillac's engine compartment. The Fire Department was summoned and arrived at about 2:20 p.m.
The August 31, 1990 West Orange Fire Department Fire Incident Report stated the fire originated in the engine compartment, the form of heat ignition and ignition factor were undetermined and the type of material ignited was wire insulation and cable insulation.
The August 31, 1990 West Orange Fire Department Fire Incident Report Supplement stated the fire engulfing the engine compartment and the underside of the dashboard was extinguished and there were no signs of fluid leaks.
On the same day, shortly after the incident, plaintiffs reported the fire to their automobile insurer, State Farm.
On September 5, 1990, a State Farm appraiser declared the Cadillac a "total loss." The Cadillac's odometer reading was approximately 16,000 miles. Thereafter, on September 6, 1990, *231 Tech-Cor, Inc. (Tech-Cor), a salvage company, in Carteret, New Jersey, took possession of the Cadillac.
On September 21, 1990, State Farm entered into an acknowledged agreement with Sonia Hirsch for $17,267.13, in settlement of the insurance claim.
On October 10, 1990, Peter Vallas Associates, Inc. (Vallas), inspected the Cadillac at State Farm's request. The October 12, 1990 Vallas Report concluded that a ruptured brake fluid line, emitting atomized brake fluid onto the exhaust manifold, caused the fire in the Cadillac's engine compartment. The Vallas inspectors eliminated other possible competing causes such as malfunctions of the oil, fuel and electrical systems. The Vallas inspectors found low fire patterns at the base of the Cadillac's firewall where the brake fluid lines were located and "severe discoloration [of] and direct flame impingement" on the left brake line.
On November 1, 1990, Tech-Cor received title to the Cadillac. Tech-Cor sold the Cadillac to King George Auto Sales in Rahway, New Jersey, on December 10, 1990. This is the Cadillac's last known whereabouts.
In the meantime, on or about September 17, 1990, plaintiff Irving Hirsch contacted General Motors Cadillac Motor Division and reported the fire incident. Subsequently, William Hellman, Warnock's parts and service director, referred plaintiff Irving Hirsch to Cadillac District Service Manager Larry Swift. Mr. Swift and plaintiff Irving Hirsch met at Warnock's premises in South Orange, New Jersey, on or about October 15, 1990, and discussed the fire incident.
There was no further contact between plaintiffs and defendants until April 1991. Two identical State Farm letters, dated April 3, 1991, addressed to Warnock and to General Motors, stated that "[o]ur investigation indicates that you are responsible for this damage, and we are looking to you for reimbursement."
A letter from the Cadillac Motor Car Division of General Motors to State Farm, dated April 11, 1991, acknowledged receipt *232 of the April 3, 1991 letter and informed State Farm that General Motors' insurance carrier was Royal Globe Insurance Company, and requested that further correspondence be directed to them.
State Farm then addressed a letter, dated May 1, 1991, to Royal Globe Insurance Company, stating that "[w]e would appreciate hearing from you at your earliest opportunity in order to avoid placing this matter in the hands of our attorneys."
Crawford & Company addressed a letter to State Farm, dated June 21, 1991, stating that they were an independent adjusting firm assigned to handle the Hirsch claim on behalf of Warnock; and that they were denying State Farm's subrogation claim because the brake pads were replaced two months before the fire, there was no proof that Warnock's negligence caused the fire, and "anything could have severed the [Cadillac's] brake line...."

III. Procedural History and Discovery
Plaintiffs filed suit on October 25, 1991. Their complaint states claims for breach of a sales contract and breach of a service contract; careless, reckless and negligent design, manufacture, service, etc. of a 1988 Cadillac; strict products liability for placing a defective Cadillac into the stream of commerce; and vicarious liability of General Motors for the breach of contract, negligence and strict products liability of defendants Cadillac Motor Car Division, Wells Cadillac, and John Does 1-20.
On December 26, 1991, the office of Richard A. Merkt, Esquire, filed an answer on behalf of Warnock. On June 3, 1992, the firm of Bumgardner, Hardin & Ellis filed a Substitution of Attorney on behalf of Warnock, and filed an amended answer on July 8, 1992.
After a January 2, 1992 Stipulation Extending Time For Answer, General Motors filed an answer on January 9, 1992. Although Warnock's answer and amended answer as well as General Motors' answer state various separate defenses, spoliation of evidence was not raised until this motion.
On January 9, 1992, General Motors inquired as to the Cadillac's location. Plaintiffs (State Farm as subrogee) furnished that information *233 via an April 13, 1992 reply letter, stating that "the vehicle in question was sold to King George Auto Sales ... on or about December 10, 1990."
On May 18, 1992, plaintiffs duly served General Motors with answers to interrogatories.
On June 9, 1992, Warnock made a Demand For Production of Documents on plaintiffs. Plaintiffs' June 12, 1992 reply letter provided information as to the Cadillac's location.
On June 17, 1992, plaintiffs' oral depositions were taken.
On June 24, 1992, Warnock sent certified answers to interrogatories and responses to plaintiffs' Notice to Produce (plaintiffs' Notice to Produce was originally sent to Richard A. Merkt's office on March 23, 1992).
On August 11, 1992, depositions of John Pawlyk and William Hellman were taken.
On September 30, 1992, General Motors sent its verified answers to plaintiffs' initial and supplemental interrogatories.
This court heard oral argument on defendant's motion to dismiss plaintiffs' complaint on March 12, 1993.
To date, defendants believe King George Auto Sales to be out-of-business, and efforts to locate the Cadillac have been unsuccessful.

IV. Issues
There are several issues raised in this motion. The first issue is the present state of spoliation law in New Jersey, and whether New Jersey recognizes the independent tort of spoliation of evidence. Second, whether spoliation of evidence is an affirmative defense which must be raised in the answer. Third, whether plaintiffs (State Farm as subrogee) engaged in spoliation of evidence. Finally, assuming that plaintiffs did engage in spoliation of evidence, this court must ascertain the appropriate remedy for the spoliation.

*234 V. Discussion

A. Liability for spoliation of evidence.
"Spoliation" is defined as "[t]he destruction of evidence.... The destruction, or the significant and meaningful alteration of a document or instrument." Black's Law Dictionary 1257 (5th ed. 1979) (citation omitted). Spoliation of evidence in a prospective civil action occurs when evidence pertinent to the action is destroyed, thereby interfering with the action's proper administration and disposition. See Bondu v. Gurvich, 473 So.2d 1307, 1312 (Fla. Dist. Ct. App. 1984); see also Nancy Melgaard, Note, Spoliation of Evidence  An Independent Tort?, 67 N.D.L.Rev. 501 (1991).

1. The spoliation tort.
Spoliation of evidence, as an independent tort, has been officially recognized in at least three states. See e.g. Smith v. Superior Court, 151 Cal. App.3d 491, 198 Cal. Rptr. 829 (1984) (intentional spoliation); Bondu v. Gurvich, supra (negligent spoliation); Hazen v. Municipality of Anchorage, 718 P.2d 456 (Alaska 1986) (intentional spoliation). Litigants have asserted spoliation of evidence as a cause of action in other states, however, its recognition was declined. See e.g. Murphy v. Target Products, 580 N.E.2d 687 (Ind. 1991); Dunlap v. City of Phoenix, 169 Ariz. 63, 817 P.2d 8 (1990); Koplin v. Rosel Well Perforators, Inc., 241 Kan. 206, 734 P.2d 1177 (1987); Pharr v. Cortese, 147 Misc.2d 1078, 559 N.Y.S.2d 780 (1990).
Many states, including New Jersey, have criminal statutes proscribing destruction of evidence. "[A] number of courts have relied on the existence of these criminal penalties in refusing to recognize tort actions for the intentional spoliation of evidence." Pati Jo Pofahl, Note, Smith v. Superior Court: A New Tort of Intentional Spoliation of Evidence, 69 Minn.L.Rev. 961, 966 (1985) (citations omitted).
The federal courts also fail to recognize an independent tort for spoliation of evidence. See e.g. Wilson v. Beloit Corp., 921 F.2d *235 765 (8th Cir.1990); Headley v. Chrysler Motor Corporation, 141 F.R.D. 362 (D.Mass. 1991) (subject matter jurisdiction based on diversity of citizenship); Computer Associates Intern v. American Fundware, 133 F.R.D. 166 (D.Colo. 1990); Akiona v. U.S., 938 F.2d 158 (9th Cir.1991); Austerberry v. U.S., 169 F.2d 583 (6th Cir.1948); Wong v. Swier, 267 F.2d 749 (9th Cir.1959); Vick v. Texas Employment Commission, 514 F.2d 734 (5th Cir.1975); Boyd v. Ozark Airlines, Inc., 568 F.2d 50 (8th Cir.1977); S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co., 695 F.2d 253 (7th Cir.1982); Coates v. Johnson & Johnson, 756 F.2d 524 (7th Cir.1985); Nation-Wide Check v. Forest Hills Distributors, 692 F.2d 214 (1st Cir.1982).

a. Intentional spoliation of evidence.
Intentional spoliation of evidence was first recognized as a separate tort in Smith v. Superior Court, supra. In Smith v. Superior Court, supra, plaintiff Phyllis Smith was injured when a wheel from a van sailed through her automobile's windshield. Fifteen days after the accident, defendant Abbott Ford, the automobile dealer that equipped the van with customized tires and wheels, agreed with plaintiff's counsel to preserve certain van parts relevant to the case. However, Abbott Ford later lost or destroyed the evidence.
In Smith v. Superior Court, supra, the California Court of Appeal recognized the tort of intentional spoliation of evidence, reasoning that intentional interference with a prospective civil action is analogous to the tort of intentional interference with contractual relations. The court concluded that the right to bring a personal injury lawsuit was a legally protectable interest, and interference with that interest is tortious conduct.
California has criminal statutes proscribing destruction of evidence.[1] However, the Smith Court reasoned that the policy and deterrence considerations behind these criminal statutes do not *236 adequately protect a plaintiff's interest to bring a lawsuit. First, the court noted that criminal statutes are designed to prevent spoliation of evidence from invading the public interest in the administration of justice, which differs from the private interest in receiving compensation through a personal injury action. Accordingly, the court held it was necessary to provide a plaintiff with a complete remedy by recognizing a separate tort for spoliation of evidence. Id., at 835.

1) Intentional spoliation of evidence in New Jersey.
In Trump Taj Mahal v. Costruzioni Aeronautiche Giovanni, 761 F. Supp. 1143 (D.N.J. 1991), the court declined to adopt the independent tort of intentional spoliation of evidence, stating that "that role is better suited to New Jersey state courts." Id., at 1162. About four months later, litigants asserted intentional spoliation of evidence as "fraudulent concealment of evidence" in Viviano v. CBS, Inc., 251 N.J. Super. 113, 597 A.2d 543 (App.Div. 1991), certif. denied, 127 N.J. 565, 606 A.2d 375 (1992).
In Viviano v. CBS, Inc., supra, plaintiff, a CBS employee, lost three and a half fingers when a pressing machine malfunctioned on December 1, 1978. CBS immediately removed the timer on the machine and discarded it. Plaintiff filed a personal injury suit naming only fictitious parties and later amended her complaint on September 10, 1981 to include her employer CBS as a defendant. In May 1982, plaintiff discovered a memorandum describing the results of Mr. Ronald Brandt's investigation ("Brandt memorandum"), which stated that the "old Taylor Timers" on the pressing machines were defective and that CBS was in the process of replacing them with safer timers. Id., 251 N.J. Super. at 118-19, 597 A.2d 543. Plaintiff's attorney later received a copy of that memorandum, and subsequently, plaintiff again amended her complaint to include Sybron Corporation, successor of the Taylor Timers manufacturer.
Subsequently, plaintiff commenced a suit against CBS and certain supervisory employees for unreasonable interference with discovery and fraudulent concealment of evidence. In February *237 1987, plaintiff settled with Sybron and the personal injury suit was dismissed with prejudice.
In the lower court, the jury found all defendants liable for fraudulent concealment of evidence, and awarded plaintiff compensatory and punitive damages.
The Appellate Division held that defendants[2] who fraudulently conceal evidence relevant to a lawsuit are liable in damages. Id., at 117, 597 A.2d 543. The Viviano Court stated that "[p]laintiff's cause of action in the present case is analogous to a recently recognized cause of action for the destruction of evidence which has been dubbed `spoliation of evidence.'" Id., at 125, 597 A.2d 543 (footnote omitted). The court listed the elements of the tort of intentional spoliation of evidence espoused in County of Solano v. Delancy, 215 Cal. App.3d 1232, 264 Cal. Rptr. 721 (1989). It further stated that "[i]f `concealment of evidence' is substituted for `destruction of evidence,' all those elements were covered by the trial court's concealment of evidence charge in the present case and all of them are amply supported by the evidence." Viviano v. CBS, Inc., supra, 251 N.J. Super. at 126, 597 A.2d 543.
Accordingly, New Jersey recognizes a tort analogous to intentional spoliation of evidence. In Viviano v. CBS, Inc., supra, plaintiff did recover damages for defendants' fraudulent concealment of evidence. A recovery for damages supports the existence of an independent tort, whereas sanctions for interference with discovery would suggest otherwise. New Jersey, however, may not fully embrace the California approach for intentional spoliation of evidence, discussed infra.

2) Elements of fraudulent concealment of evidence.
The Smith Court applied the traditional tort elements of intent, causation and damages to spoliation of evidence. See Smith v. *238 Superior Court, supra. The five elements of intentional spoliation of evidence were elaborated in County of Solano v. Delancy, supra. In that case, defendant Brian Delancy was driving on a County of Solano road. Plaintiff Faith Owens was thrown from defendant's automobile, and subsequently brought a personal injury suit against Brian Delancy, his parents and the County of Solano. Approximately six weeks after the accident, the Delancys and their insurer destroyed the automobile. County of Solano v. Delancy, supra, 264 Cal. Rptr. at 728.
"The elements of intentional spoliation would have been identified by analogy to intentional interference with prospective economic advantage, and they would have included: (1) pending or probable litigation involving the plaintiff; (2) knowledge by the defendant of the existence or likelihood of the litigation; (3) intentional `acts of spoliation' on the part of the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the acts of the defendant." Id., at 729 (footnote omitted).
The Viviano Court applied similar elements to fraudulent concealment of evidence. See Viviano v. CBS, Inc., supra. The theory of fraudulent concealment requires that plaintiff show the following: (1) that defendants had a legal obligation to disclose the evidence to plaintiff; (2) that the evidence was material to plaintiff's case; (3) that plaintiff could not have readily learned of the concealed information without defendants disclosing it; (4) that defendants intentionally failed to disclose the evidence to plaintiff; and (5) that plaintiff was harmed by the relying on the nondisclosure. Id., 251 N.J. Super. at 123, 597 A.2d 543 (citation omitted).

a) Legal obligation to disclose the evidence to plaintiff.
In Viviano v. CBS, Inc., supra, "[t]he trial judge charged the jury that the defendants had the duty to provide plaintiff with any documents called for by the deposition subpoena served on defendant Joseph Kroll, the manager of the plant at which [plaintiff] was injured, and to provide her with any additional documents *239 that Mr. Kroll undertook to produce when he was requested to do so during the course of his deposition." Viviano v. CBS, Inc., supra, at 123, 597 A.2d 543 (citation omitted).
A duty to disclose evidence corresponds to the first two enumerated elements espoused in County of Solano v. Delancy, supra. A "(1) pending or probable litigation involving the plaintiff; [and] (2) knowledge by the defendant of the existence or likelihood of the litigation...." Id., 264 Cal. Rptr. at 729. The court stated that "if Smith had undertaken to list the elements of [intentional spoliation of evidence], we do not believe that the list would have included an agreement on the part of the defendant." Id. Accordingly, an agreement or an order to preserve evidence should not be required for a duty to disclose evidence to arise. A duty may exist where there is, inter alia, "foreseeability of harm to the plaintiff." See id. (elements establishing the existence of a duty are considered under the court's analysis of negligent spoliation of evidence).

b) The evidence was material to plaintiff's case.
In Viviano v. CBS, Inc., supra, the jury found the information contained in the Brandt memorandum was material to plaintiff's case. See id. "(I)t contained the key information plaintiff needed to recover for her injuries. It told her, `[O]n the old Taylor Timers.... [i]f the microswitch sticks, the press will reset itself and go back in and through a cycle.' In those few words, it explained what had probably caused the accident, it identified the timer as the defective component responsible for the malfunction, and it named the company that manufactured the timer." Id., 251 N.J. Super. at 121, 597 A.2d 543.

c) Plaintiff could not have readily learned of the concealed information without defendants' disclosure.
In Viviano v. CBS, Inc., supra, CBS and its employees had complete control over the information of the manufacturer and safety records of the press timers, as apparent from the Brandt memorandum. Furthermore, defendants discarded the timer immediately *240 after the accident. Accordingly, the jury found the plaintiff could not have readily learned of that information without defendants' disclosure. Viviano v. CBS, Inc., supra, at 124, 597 A.2d 543.

d) Defendants intentionally failed to disclose the evidence to plaintiff.
The Smith Court did not specifically define the intent element. It was unnecessary for the Smith Court to set the parameters of the intent element because Abbott Ford's destruction of the evidence, in light of its agreement to preserve it, established intent.
In Viviano v. CBS, Inc., supra, the court did not specify the level of intent necessary to meet the intent requirement for a prima facie case of concealment of evidence. However, the necessary intent level for fraudulent concealment of evidence does not rise to the level of "malice" because all defendants were liable for compensatory damages, whereas only CBS was liable for punitive damages. The Viviano court held "there was sufficient basis in the present suit for the jury's award of punitive damages. There was substantial evidence of intentional wrongdoing in the sense of an `evil minded act' or an act accompanied by wanton and willful disregard of the rights of another." Id., at 129-30, 597 A.2d 543 (citing Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49, 477 A.2d 1224 (1984)).
The Viviano court, in response to defendants' claim "that the award of punitive damages against CBS is fatally inconsistent with the failure to award such damages against the individual defendants, [stated that] ... the verdict can also be understood as implying that the award of punitive damages was warranted by the sum of the malice evidenced by the acts of all the individual defendants acting together, but not by the acts of any one." Id., 251 N.J. Super. at 131, 597 A.2d 543 (emphasis added).
Accordingly, the level of intent necessary to show that a defendant or third party engaged in concealment of evidence need *241 not rise to a level of "an `evil minded act' or an act accompanied by wanton and willful disregard of the rights of another." Id., at 129, 597 A.2d 543. Rather, a defendant or third party, who engages in concealment of evidence with malicious intent, would be liable to a plaintiff for punitive damages, in addition to compensatory damages.
Courts have attributed intent to a spoliator who has violated a court order or an agreement to preserve the evidence. See Smith v. Superior Court, supra; Merck & Co., Inc. v. Biorganic Laboratories, Inc., 82 N.J. Super. 86, 196 A.2d 688 (App.Div. 1964).
"In absence of such compelling circumstances, however, traditional tort principles suggest that courts should require plaintiffs seeking recovery for intentional spoliation of evidence to prove that the defendant intended to produce the harm or knew with substantial certainty that the harm, interference with another's prospective civil suit, would follow." Pofahl, supra, at 973 (citation omitted); see William Prosser, Handbook of the Law of Torts § 7 (4th ed. 1971).

e) Plaintiff was harmed by the reliance on the nondisclosure.

(i) Causation.
The Smith Court, as with all interference torts, relaxed the standard for proving causation. See Smith v. Superior Court, supra. A number of intervening variables occurring during the litigation could have impeded plaintiff's cause of action. Therefore, the Smith court held that plaintiff need only prove that there was a "reasonable probability" that she would have recovered compensation "but for" defendant Abbott Ford's conduct. Id., 198 Cal. Rptr. at 837.
In Viviano v. CBS, Inc., supra, the jury found defendants liable for fraudulent concealment of material discovery information and tortious interference with prospective economic advantage. Id., 251 N.J. Super. at 120, 597 A.2d 543.

*242 (ii) Damages.
"Under the traditional damages standard, ... plaintiff[s] must prove the amount of damages with reasonable certainty." Pofahl, supra, at 975 (citing Prosser, supra, § 30, at 143-44). However, the Smith court relaxed the damages standard because, in an action for interference with a prospective civil case, plaintiffs cannot exactly quantify their recovery had the evidence not been destroyed. Accordingly, the Smith court required that plaintiff prove her damages as a matter of "just and reasonable inference." Smith v. Superior Court, supra, at 198 Cal. Rptr. 835.
In Viviano v. CBS, Inc., supra, aside from an award of punitive damages against CBS, the jury awarded plaintiff compensatory damages for the loss of interest on her personal injury settlement and expenses. Id., at 120, 597 A.2d 543.
In that case, damages were more readily calculable because of the timing of the case. Sybron had previously settled the matter with plaintiff, and she had incurred expenses to pursue the separate action against CBS et al. Accordingly, the Viviano Court affirmed a nonspeculative jury award for compensatory damages and expenses, which deviates from the more speculative damages standard of the California approach.

b. Negligent spoliation of evidence.
In Velasco v. Commercial Bldg. Maintenance Co., 169 Cal. App.3d 874, 215 Cal. Rptr. 504, 506 (1985), the California Court of Appeal first recognized negligent spoliation of evidence as an independent tort. California and Florida recognize an independent tort for negligent spoliation of evidence. See Velasco v. Commercial Bldg. Maintenance Co., supra; County of Solano v. Delancy, supra; Bondu v. Gurvich, supra; see also Philip A. Lionberger, Comment, Interference With Prospective Civil Litigation By Spoliation of Evidence: Should Texas Adopt A New Tort?, 21 St. Mary's L.J. 209, 215 (1989). However, Florida, Illinois and Minnesota require resolution of the underlying claim before recognizing a spoliation claim. See Bondu v. Gurvich, *243 supra, at 1311; Fox v. Cohen, 84 Ill. App.3d 744, 40 Ill.Dec. 477, 482, 406 N.E.2d 178, 183 (1980); Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434 (Minn. 1990); see also Theresa M. Owens, Comment, Should Iowa Adopt The Tort Of Intentional Spoliation Of Evidence In Civil Litigation?, 41 Drake L.Rev. 179, 184 (1992).
In Velasco v. Commercial Bldg. Maintenance Co., supra, plaintiffs placed the remains of a bottle into a plain, unmarked paper bag. They took the bag and its contents to an attorney, who left the bag on his desk overnight. A custodian subsequently discarded the bag, and plaintiffs brought suit against defendant Commercial Building Maintenance Company. Id., 215 Cal. Rptr. at 506. The Court of Appeal affirmed the lower court's granting of a demurrer, holding that it was not reasonably foreseeable for a prudent custodian to preserve an unmarked bag containing a broken bottle. Id., at 506-7.
The Velasco court also expanded liability for spoliation of evidence to third parties. See id., at 505; see also Lawrence Solum & Stephen Marzen, Truth and Uncertainty: Legal Control of the Destruction of Evidence, 36 Emory L.J. 1085, 1104 (1987).
The Velasco court relied on Smith v. Superior Court, supra,[3] to "hold that a cause of action may be stated for negligent destruction of evidence needed for prospective civil litigation." Velasco v. Commercial Bldg. Maintenance Co., supra, at 506. Analogizing negligent spoliation of evidence to "negligent interference with a prospective economic advantage," the court set out the elements necessary to determine whether a defendant owed plaintiff a duty to preserve the evidence: "`(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that plaintiff suffered injury, (4) the closeness of the connection between the defendant's *244 conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm. [Citation.]'" Id. (citing J'Aire Corp. v. Gregory, 24 Cal.3d 799, 157 Cal. Rptr. 407, 598 P.2d 60 (Sup. 1979)).
In County of Solano v. Delancy, supra, the court stated the most important of these factors to be the "foreseeability of harm to the plaintiff." Id., 264 Cal. Rptr. at 729 (citation omitted).

1) Negligent spoliation of evidence in New Jersey.
New Jersey courts have not recognized negligent spoliation of evidence as an independent tort. See Nerney v. Garden State Hosp., 229 N.J. Super. 37, 550 A.2d 1003 (App.Div. 1988). In Nerney v. Garden State Hosp., supra, plaintiff alleged that defendant Dr. Eugene Cohen negligently misdiagnosed a wrist fracture. Plaintiff sent his X-rays, which Dr. Cohen had originally examined, to Dr. Paul Friedman. Dr. Friedman concluded that the X-rays evidenced a fractured wrist, but they were later lost or misplaced and unavailable at trial. The Appellate Division stated that "[t]he negligent loss of evidence is comparable to a party's failure to comply with discovery obligations, which may result in an order barring introduction of evidence at trial." Id., at 40, 550 A.2d 1003 (citing R. 4:23-2(b)(2); Clark v. Fog Contracting Co., 125 N.J. Super. 159, 309 A.2d 617 (App.Div. 1973), certif. den., 64 N.J. 319, 315 A.2d 408 (1973)).

c. Conclusion.
In this case, plaintiffs could foresee possible litigation upon receipt of the October 12, 1990 Vallas Report. That report was requested for possible litigation, and upon its receipt, plaintiffs had all the necessary information to make a determination of whether to proceed with a lawsuit. The Vallas Report unequivocally attributes the cause of that fire to a ruptured brake line emitting flammable atomized brake fluid on hot engine components.
The spoliation tort, whether intentional or negligent, and discovery sanctions, serve to deter acts of destruction of evidence. *245 Introduction of all material evidence at trial is germane to arriving at the truth and at accurate results. See generally Solum & Marzen, supra. The spoliation tort, however, is not theoretically consistent with the facts in this case. The spoliation tort protects a litigant's interest in bringing a prospective cause of action. Accordingly, the goal of the spoliation tort should be to compensate the nonspoliating litigant for the uninvited interference with the prospective lawsuit resulting from destroyed evidence.
The protective function of the spoliation tort is inapplicable where spoliation of evidence interferes with a defendant's ability to defend a lawsuit. And in this case, there has been no interference with plaintiffs' interest to bring a prospective lawsuit. Rather, plaintiffs have interfered with defendants' ability to adequately defend their case because they have not made the Cadillac available for defendants' inspection and evaluation.
The protective function of the spoliation tort, however, may be applicable where there are counterclaimants, or multiple defendants seeking indemnification or contribution and a co-defendant or a third party spoliates evidence that would prove another co-defendant's right to indemnification or contribution.
Furthermore, the remedy for spoliation of evidence is damages, to which a defendant would not ordinarily be entitled. In states that recognize the spoliation tort, a counterclaimant may possibly sue a plaintiff spoliator, and a defendant may possibly sue and recover damages from a co-defendant or a third party who interferes with that defendant's ability to defend the original lawsuit.
Accordingly, where plaintiffs have destroyed evidence which interferes with a defendant's ability to defend a lawsuit, there has been an interference with discovery. Where plaintiffs spoliate such evidence in New Jersey, sanctions should be imposed, and moreover, the nonspoliating defendant may be entitled to counsel fees. See Pressler, Current N.J. Court Rules (1993 ed.), R. 4:23-4.

*246 2. Interference with civil discovery.
As previously mentioned, New Jersey recognizes fraudulent concealment of evidence as an independent tort. However, New Jersey does not recognize a separate tort for negligent spoliation. Rather, the Nerney court stated that negligent spoliation of evidence, as noncompliance with the discovery rules, could result in preclusion of evidence at trial. Nerney v. Garden State Hosp., supra, 229 N.J. Super. at 40, 550 A.2d 1003; see Pressler, Current N.J. Court Rules (1993 ed.), Comment to R. 4:23-2.
It is important to recognize that a spoliator's intent level does not affect liability for destruction of evidence resulting in interference with discovery. Rather, it has a bearing on the remedy to be administered for that spoliation.

a. Failure to comply to a Demand for Production or Request for Inspection.

1) R. 4:23-4.
R. 4:23-4 provides that when a party fails to attend a scheduled deposition, fails to comply with a Demand for Production of Documents or fails to respond to a Request for Inspection, "the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (1)(2) and (3) of R. 4:23-2(b)." Pressler, Current N.J. Court Rules (1993 ed.), R. 4:23-4. R. 4:23-4 follows Fed.R.Civ.P. 37(d). See id., Comment to R. 4:23-4. R. 4:23-2(b) supplies remedies for noncompliance with discovery, and will be discussed infra.

2) Fed.R.Civ.P. 37(d).
Since R. 4:23-4 follows Fed.R.Civ.P. 37, federal civil discovery case law is persuasive in interpreting violations of civil discovery in New Jersey. Fed.R.Civ.P. 37(d) provides in pertinent part:
If a party or an officer, director, or managing agent of a party ... fails (1) to appear before the officer who is to take the deposition, after being served with proper notice, or (2) to serve answers or objections to interrogatories ..., or (3) to *247 serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule....
Rule 37 permits sanctions for failure to serve a written response or for noncompliance with a court order. Fed.R.Civ.P. 37(d) and (b)(2). "Only when a party destroys documents in the face of a court order to preserve or produce documents does the rule seem to levy sanctions." Dale A. Oesterle, A Private Litigant's Remedies for an Opponent's Inappropriate Destruction of Relevant Documents, 61 Tex.L.Rev. 1185, 1222 (1983).
"[T]wo major treatises on federal practice take the language literally and state unequivocally that rule 37(b) ... does not apply if there has not been a court order. The trial courts, however, do not appear to be convinced. If the published opinions can be accepted as representing the predominant practice, trial courts, largely without discussion, have expanded the scope of the rule and apply rule 37(b) in destruction cases absent an outstanding court order. In essence, several courts have simply read the rule as if its deficiency did not exist." Id., at 1223 (citing 4A J. Moore, Moore's Federal Practice ¶ 37.03(2) (2d ed. 1982); C. Wright & A. Miller, Federal Practice and Procedure § 2289 (1972)).[4]
In Bowmar Instrument Corp. v. Texas Instruments, Inc., 25 Fed.R.Serv.2d 423, 1977 WL 22799 (N.D.Ind. 1977), plaintiffs sought rule 37(b)(2) sanctions when defendant had destroyed documents before the complaint was filed. The court, in response to defendant's contention that rule 37 applies only where destruction occurs in defiance of a court order, stated:
Surely this proposition must be rejected. The plaintiffs are correct that such a rule would mean the demise of the real meaning and intent of the discovery process provided by the Federal Rules of Civil Procedure.... [S]ome duty must be *248 imposed in circumstances such as these lest the factfinding process in our courts be reduced to a mockery. Id., at 426-27.
In United States v. IBM, 66 F.R.D. 189 (S.D.N.Y. 1974), plaintiff United States destroyed documents before entry of a court order to preserve the documents. The court stated without much elaboration that "the Government had an obligation to preserve all documents specifically requested that were relevant to this litigation...." Id., at 194.
In In re Agent Orange Product Liability Litigation, 506 F. Supp. 750 (E.D.N.Y. 1980), the court found that independent from a court order to preserve documents, "[t]he government is under an additional obligation imposed by the Federal Rules of Civil Procedure to preserve documents requested in Dow's notice to produce." Id., at 751; see also Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co., 667 F.2d 600 (7th Cir.1981); Fox v. Studebaker-Worthington, Inc., 516 F.2d 989 (8th Cir.1975); but see An-Port, Inc. v. MBR Industries, Inc., 772 F. Supp. 1301 (D.Puerto Rico 1991) (there must be a violation of a prior court order before sanctions may be imposed); Wembley, Inc. v. Diplomat Tie Co., 216 F. Supp. 565 (D.Md. 1963) (party must first seek an order before moving for imposition of sanctions).
In William T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443 (C.D.Cal. 1984), the court stated:
Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information. Id., at 1455.
Accordingly, the federal courts have not adhered to the literal language of rule 37. Rather, a growing number of federal courts require a breach of an obligation or duty to preserve evidence before imposing civil discovery sanctions.[5] A court order creates *249 duty to preserve evidence; however, a duty to preserve evidence may exist independently from such a court order.[6] The existence of such a duty will be discussed infra.
Accordingly, to compensate for deficiencies of rule 37, the federal courts may issue discovery orders, aware that compliance is impossible, or may exercise their inherent power to control judicial proceedings. This further supports the articulation that a duty to preserve evidence, independent from a preservation order, may exist under certain circumstances.

b. Conclusion.

1) Independent duty to preserve evidence.
The existence of a duty is a question of law to be determined by the court. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37, at 236 (5th ed. 1984). A negligent spoliation of evidence case, Velasco v. Commercial Bldg. Maintenance Co., supra, set out the elements to determine whether a duty to preserve evidence arises. See id.; cf. Reid v. State Farm Mut. Auto. Ins. Co., 173 Cal. App.3d 557, 218 Cal. Rptr. 913 (1985). In County of Solano v. Delancy, supra, the court stated the most important factor was the foreseeability of harm to the plaintiff. Id., at 729 (citation omitted) (note that the court was concerned with the unclean hands of the defendant spoliator).
*250 In United States v. IBM, supra, there was an obligation to preserve all documents relevant to the litigation. Id., at 194. In Viviano v. CBS, Inc., supra, an element to establish fraudulent concealment of evidence is a defendant's legal obligation to disclose the evidence to plaintiff. Id., 251 N.J. Super. at 123, 597 A.2d 543 (citation omitted). A duty of disclosure corresponds to the first two enumerated elements in County of Solano v. Delancy, supra, which are "(1) pending or probable litigation involving the plaintiff; [and] (2) knowledge by the defendant of the existence or likelihood of the litigation...." Id., 264 Cal. Rptr. at 729.
In William T. Thompson Co. v. General Nutrition Corp., supra, the court stated that "[w]hile a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." Id., at 1455 (citations omitted).
Accordingly, a duty to preserve evidence, independent from a court order to preserve evidence, arises where there is: (1) pending or probable litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of litigation; (3) foreseeability of harm to the defendants, or in other words, discarding the evidence would be prejudicial to defendants; and (4) evidence relevant to the litigation.
In this case, plaintiffs' discarding of the Cadillac has frustrated any possibility for a Request for Inspection. A duty to preserve evidence independent of a court order may not exist in every case, however, under the circumstances of this case, plaintiffs had a duty to preserve evidence.
First, the October 12, 1990 Vallas Report apprised plaintiffs of probable litigation involving defendants. Second, plaintiffs, upon receipt of the Vallas Report, knew of the likelihood of subsequent litigation. Plaintiffs must exercise due diligence in assessing the *251 report and in deciding whether to seek renumeration from third parties. Third, it is foreseeable that disposal of the Cadillac is harmful to defendants. The Vallas Report supports plaintiffs' case, and defendants were denied the opportunity to examine the Cadillac to determine the validity and viability of the Vallas Report findings, as well as to determine other competing causes of the fire. Failure to preserve the evidence or provide inspection access is prejudicial to defendants. Finally, the Cadillac is central, and thus relevant and material, to this litigation. It is the best evidence to determine whether plaintiffs' claims are truthful and to ensure that the results will be accurate. Accordingly, plaintiffs had a duty to preserve the Cadillac, and their precomplaint actions have breached that duty, thereby resulting in interference with the discovery process.

2) Scope of duty.
The scope of the duty to preserve evidence is not boundless. A "potential spoliator need do only what is reasonable under the circumstances." County of Solano v. Delancy, supra, 264 Cal. Rptr. at 731. In County of Solano v. Delancy, supra, the court stated that it would have been reasonable for the Delancys to:
contact the County; impose a deadline on inspection of the vehicle; and insist that the County bear the expense of preserving the vehicle if the County needed it beyond that deadline. In this respect, the potential spoliator should have no greater duty than a `good Samaritan,' who `is never required to do more than is reasonable; and he may terminate his responsibility ... or he may discontinue his performance and step out of the picture altogether, upon notice of his intention and disclosure of what remains undone, provided that it is reasonable to do so under the circumstances.' Id. (citing Keeton et al., supra, at 382) (footnotes omitted).
In this case, State Farm settled its claim with plaintiffs. Thereafter, on September 6, 1990, Tech-Cor took possession of the Cadillac. The October 12, 1990 Vallas Report apprised plaintiffs of defendants' alleged liability for the fire incident. Plaintiffs requested that report with probable litigation in mind. Tech-Cor took possession of the Cadillac on November 1, 1990. Accordingly, the scope of plaintiffs' duty was to, at least, allow defendants access to inspect the Cadillac for a reasonable time after receipt of *252 the October 12, 1990 Vallas Report. The scope of plaintiffs' duty also included notice of probable litigation along with inspection access.

3) Plaintiffs' contentions.
Plaintiffs contend that plaintiff Irving Hirsch personally notified defendants of the fire involving the Cadillac and the resultant claim several weeks after the incident.
In American Family Ins. Co. v. Village Pontiac GMC, Inc., 223 Ill. App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115 (1992), the plaintiffs purchased a 1981 Pontiac demonstrator model from defendant Village Pontiac. On October 7, 1981, as they drove the Pontiac home, plaintiffs noticed electrical problems and a "burning" smell. Id., 166 Ill.Dec. at 95, 585 N.E.2d at 1117. On November 9, 1981, a fire severely damaged plaintiffs' house. "The next day, [plaintiff] Nancy Gill telephoned Village Pontiac and told the service director that a fireman had told her that the car caused the fire." Id. Subsequently, plaintiffs' homeowner's insurer had the Pontiac inspected. The inspector concluded that the fire originated in the Pontiac's trunk and was caused by a short circuit from a damaged trunk light circuit wire. Id. The inspector removed that wire and seven months later, the vehicle was destroyed. Id. On appeal, plaintiffs asserted that defendant Village Pontiac and defendant General Motors (through the principle of imputed knowledge) had notice of impending litigation because of plaintiff Nancy Gill's telephone call. The Appellate Court held that it did "not believe ... that a single telephone call from an understandably distraught customer serves as notice of impending litigation so as to warrant defendants to investigate the fire in this case." Id., at 97, 585 N.E.2d at 1119.
In this case, there was more than a single telephone call to the defendants. Plaintiff Irving Hirsch notified both General Motors Cadillac Motor Division and Warnock about the fire incident. In mid September 1990, Warnock's parts and service director, Mr. Hellman, through a communications system linked to General *253 Motors Cadillac Motor Division, became aware of the customer concern. Mr. Hellman then referred plaintiff Irving Hirsch to General Motors representative Larry Swift, and they met on October 15, 1990. However, these inquiries and the meeting were preliminary. Defendants could not reasonably expect probable litigation at that time, especially where the cause of the fire was undetermined.[7]
In this case, notifying defendants that plaintiff's Cadillac caught fire and that plaintiffs had made a claim to their insurer is not notice of prospective litigation. First, informing defendants of the fire incident of undetermined cause and of a claim submitted to an insurer at a meeting, without more, does not put defendants on notice that they were at fault and that they could expect a lawsuit in the near future. According to his June 17, 1992 deposition, plaintiff Irving Hirsch received a copy of the August 31, 1990 West Orange Fire Department Fire Incident Report about one week after the fire. That report stated that the cause of the fire was undetermined. Moreover, plaintiff Irving Hirsch never saw the Vallas Report until the morning of his deposition. Second, as with any accident, defendants would expect insureds to file a claim with their insurers. Finally, State Farm requested an expert investigation for the purposes of prospective litigation. The Vallas Report's findings and conclusions were the impetus for bringing suit. Defendants first became aware of their alleged liability for the fire from the April 3, 1991 letters. Those letters apprised defendants that State Farm had conducted an investigation.
In American Family Ins. Co. v. Village Pontiac GMC, Inc., supra, the Appellate Court stated:
Farmers Insurance Company had title to the car and, as an insurance company, unquestionably knew the importance of the car in allowing defendants to prepare a *254 defense. Indeed, Farmers Insurance in anticipation of a subrogation claim allowed the car to be destroyed only after its experts had thoroughly examined the car and had issued their opinions on the cause of the fire. [¶] ... [D]efendants were unable to inspect, as plaintiffs' experts were, the most important piece of evidence because of plaintiffs' actions. Plaintiffs were the only individuals with first-hand knowledge of the physical evidence which is far more probative under these circumstances in determining whether the vehicle caused the fire than photographs and two wires taken from the trunk area. [Citation.] As a matter of sound public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her description of it. Id., at [96, 585 N.E.2d at] 1118 (citing Nally v. Volkswagen of America, Inc. [405 Mass. 191], 539 N.E.2d 1017, 1021 (Mass. 1989)).
It would be prudent for manufacturers and retailers to immediately inspect every accident involving their goods. However, that is excessively burdensome. Moreover, it is not sound policy that a plaintiff, who exercises complete control over the evidence, may unilaterally inspect and discard it. Accordingly, defendants could not reasonably expect resulting litigation under the circumstances of this case.
Plaintiffs also contend that defendants summarily rejected plaintiffs' claim after State Farm notified defendants via the April 3, 1991 letters, and thus, defendants' motion should be denied. However, by April 3, 1991, plaintiffs had long relinquished control of the Cadillac, and without prior inspection access, defendants (and their insurers) could not fully assess the fire's cause.
Defendants' insurers investigated the matter and concluded there was no evidence showing that defective design, manufacture and/or service caused the fire. Therefore, defendants' insurers' rejection of plaintiffs' claim was based on defendants' inability to assess the fire's cause due to plaintiffs' failure to provide inspection access for a reasonable time after October 12, 1990. Plaintiffs cannot "clean their hands" by shifting the burden of preserving evidence to defendants after plaintiffs had breached their duty to preserve or provide inspection access to crucial evidence. Accordingly, that contention is without merit.
Plaintiffs also contend that defendants never served plaintiffs with a demand to preserve the evidence prior to the institution of *255 the lawsuit. However, plaintiffs discarded the Cadillac on November 1, 1990. Defendants had no reason to expect a prospective lawsuit until receipt of the April 3, 1991 letters. At that time, plaintiffs did not have possession or title to the Cadillac. Thus, it would be fruitless for defendants to serve plaintiffs with a demand, or even request a court order, to preserve evidence that plaintiffs did not possess or own, and that plaintiffs themselves could not locate.
"It would be unreasonable to allow litigants, by destroying physical evidence prior to a request for production, to sidestep the ... court's power to enforce the rules of discovery." Fire Ins. Exchange v. Zenith Radio Corp., 103 Nev. 648, 747 P.2d 911, 913 (1987). Accordingly, that contention is without merit.
Plaintiffs also contend that defendants have failed to assert spoliation of evidence as an affirmative defense in their respective answers. A spoliation cause of action is a satellite tort suit for which a victim can seek compensatory and even punitive damages for the loss of the underlying prospective civil suit. Some states that recognize the spoliation tort require that the underlying suit be resolved before entertaining the spoliation cause of action. See Bondu v. Gurvich, supra; Fox v. Cohen, supra; Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., supra. Other states that recognize the spoliation tort allow plaintiffs to bring claims for spoliation of evidence before the underlying suit is resolved. See Smith v. Superior Court, supra; Hazen v. Municipality of Anchorage, supra. In Viviano v. CBS, Inc., supra, plaintiff commenced the suit for fraudulent concealment of evidence before resolution of the underlying suit. See id. Accordingly, spoliation of evidence, as an independent cause of action, cannot be asserted as an affirmative defense. Rather, it is a cause of action that is usually brought separately. In this case, however, there has been interference with civil discovery, and it is properly raised by way of motion.
In the alternative, plaintiffs contend that defendants' request for dismissal should be denied because the appropriate remedy in this *256 case is preclusion of the evidence to be determined at an evidentiary hearing after completed discovery. This shall be discussed infra.

4) Destruction of evidence in New Jersey.
The above analysis evidences some confusion, not only in the federal courts, but also in the New Jersey courts. This court attempts to clarify New Jersey's approach for destruction of evidence. First, where a defendant or third party intentionally conceals evidence, which interferes with a plaintiff's interest to bring a prospective lawsuit, there has been fraudulent concealment of evidence. Second, where a co-defendant or third party intentionally conceals evidence that interferes with another co-defendant's right to indemnification or contribution, or to adequately defend oneself, there has been fraudulent concealment of evidence. Third, New Jersey does not recognize the independent tort of negligent spoliation of evidence. Therefore, where a defendant negligently spoliates evidence, there has been a failure to comply with civil discovery. Finally, as here, where a plaintiff spoliates evidence, there has been a failure to comply with civil discovery. If there has been spoliation of evidence before the entry of a court order to preserve evidence or the filing of a complaint, an independent duty to preserve the evidence may exist. The spoliator's level of intent, whether negligent or intentional, does not affect the spoliator's liability. Rather, it is a factor to be considered when determining the appropriate remedy for the spoliation.

B. Remedies for spoliation of evidence.
The three legal doctrines used to control destruction of evidence in civil litigation are the spoliation tort, the spoliation inference and civil discovery sanctions. "There is also a theoretical possibility of criminal prosecution for the destruction of evidence in civil litigation, but research reveals no reported case of such a prosecution."[8] *257 Solum & Marzen, supra, at 1087. Accordingly, the state courts and federal courts (under Fed.R.Civ.P. 37(b)(2)) have been inconsistent in their remedies for destruction of evidence.

1. The spoliation tort.
The spoliation tort was derived from negligent and intentional interference with prospective economic advantage. In jurisdictions where the spoliation tort is recognized, a victim of spoliation may recover compensatory and even punitive damages for the loss of a prospective lawsuit.
In New Jersey, a victim of fraudulent concealment of evidence may recover compensatory and punitive damages from a defendant or third party spoliator. See Viviano v. CBS, Inc., supra.

2. The spoliation inference (and rebuttable presumption).

a. Fed.R.Civ.P. 37(b)(2).
A district court "has inherent authority to enter sanctions for discovery abuses.... This inherent power has been reinforced by Fed.R.Civ.P. 37(b)(2)." Computer Associates Intern. v. American Fundware, supra (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)). Furthermore, a district court has wide discretion in imposing discovery sanctions, including severe sanctions, and will not be reversed on *258 appeal absent a clear abuse of discretion. Hazen v. Pasley, 768 F.2d 226 (8th Cir.1985); Von Brimer v. Whirlpool Corp., 536 F.2d 838 (9th Cir.1976); Computer Associates Intern. v. American Fundware, supra; see also Frame v. S-H, Inc., 967 F.2d 194 (5th Cir.1992).
Fed.R.Civ.P. 37(b)(2) provides in pertinent part:
If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery ..., the court in which an action is pending may make such orders in regard to the failure as are just, and among others the following: [¶] (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; ...
The spoliation inference is a product of the legal maxim omnia praesumuntur contra spoliatorem (all things are presumed against the destroyer). See Black's Law Dictionary 1257 (5th ed. 1979). The spoliation inference allows the fact finder to draw an unfavorable inference against the spoliating party. See Akiona v. U.S., supra; Vick v. Texas Employment Commission, supra; Boyd v. Ozark Airlines, Inc., supra; S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co., supra; Coates v. Johnson & Johnson, supra; Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594 (3d Cir.1968), cert. denied, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968) (the Third Circuit held that a litigant's attempt to persuade a witness not to testify was admissible to show that the litigant believed his claim to be weak, false or unfounded); see also Solum & Marzen, supra, at 1087, fn. 3.
To draw a spoliation inference, prerequisites of intentionality, party limitation and victim behavior must be met. See Solum & Marzen, supra, at 1088-92. Commentators disagree about the nature of the intentionality requirement. "Many courts have held that spoliation requires an intentional act of destruction and that mere negligence is insufficient. Some courts impose a more stringent intentionality element by requiring proof of fault or `bad faith'." Id., at 1088-89; cf. Nation-Wide Check v. Forest Hills Distributors, 692 F.2d 214 (1st Cir.1982) (showing of bad faith not *259 necessary to establish inference against spoliator). As to the other elements of the spoliation inference, effect of the inference and explanation and rebuttal, see Solum & Marzen, supra, at 1089-94.
Along the same vein, federal courts allow a rebuttable presumption to arise against the spoliator. Wong v. Swier, supra; Austerberry v. U.S., supra. The jury is instructed to find a presumption or inference adverse to the spoliator.[9] For example, in Welsh v. U.S., 844 F.2d 1239 (6th Cir.1988), the court held:
When ... plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, and the proof would otherwise be sufficient to survive a directed verdict, it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could have only been proved by the availability of the missing evidence.... Id., at 1248.

b. R. 4:23-2(b).
The spoliation inference approach followed by a number of the federal courts is also available in New Jersey. Where there has been a civil discovery violation, R. 4:23-2(b) permits the court to order that "(1) ... the matters ... or ... facts ... be taken to be established for the purposes of the action...." Pressler, Current N.J. Court Rules (1993 ed.), R. 4:23-2(b)(1). R. 4:23-2(b) follows Fed.R.Civ.P. 37(b)(2). See id., Comment to R. 4:23-2.

3. Civil discovery sanctions.

a. Fed.R.Civ.P. 37(b)(2).
The federal courts also employ sanctions for interference with discovery under Fed.R.Civ.P. 37(b)(2)(B) and (C). Fed.R.Civ.P. 37(b)(2) provides in pertinent part:

*260 If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery ..., the court in which an action is pending may make such orders in regard to the failure as are just, and among others the following: [¶] (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; [¶] (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; ...
Default or dismissal of an action, as a discovery sanction, requires findings (1) that the spoliator acted willfully or in bad faith, (2) that the victim was seriously prejudiced by the spoliator's actions, and (3) that the alternative sanctions would not adequately punish the spoliator and deter future discovery violations. See F.D.I.C. v. Daily, 973 F.2d 1525 (10th Cir.1992); Independent Productions Corp. v. Loew's, Inc., 283 F.2d 730 (2d Cir.1960); Green v. District of Columbia, 134 F.R.D. 1 (D.D.C. 1991); Burks v. Eagan Real Estate, Inc., 742 F. Supp. 49 (N.D.N.Y. 1990); BankAtlantic v. Blyth Eastman Paine Webber, Inc., 127 F.R.D. 224 (S.D.Fla. 1989); Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107 (S.D.Fla. 1987).

b. Discovery sanctions in New Jersey: R. 4:23-2(b).
R. 4:23-2(b)(2) and (3) mirror Fed.R.Civ.P. 37(b)(2)(B) and (C). R. 4:23-4 mirrors Fed.R.Civ.P. 37(d). Upon failure to make discovery, R. 4:23-2(b) permits the court to enter an order that "[¶] (2) [refuses] the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters into evidence; [¶] (3) ... dismiss[es] the action or proceeding or any part thereof, or render[s] a judgment by default against the disobedient party." Pressler, Current N.J. Court Rules (1993 ed.), R. 4:23-2(b)(2) and (3).
A trial court has the "inherent discretionary power to impose sanctions for failure to make discovery," Calabrese v. Trenton State College, 162 N.J. Super. 145, 151-52, 392 A.2d 600 (App.Div. 1978), see also Merck & Co., Inc. v. Biorganic Laboratories, Inc., supra, 82 N.J. Super. at 91, 196 A.2d 688, and the imposed sanctions will not be disturbed on appeal if they are "just *261 and reasonable in the circumstances...." Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 339, 78 A.2d 705 (1951).
New Jersey follows the federal approach in imposing sanctions for discovery violations. "`Since dismissal with prejudice is the ultimate sanction, it will normally be ordered only when no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party.'" Johnson v. Mountainside Hosp., Resp. Disease Assoc., 199 N.J. Super. 114, 119, 488 A.2d 1029 (App.Div. 1985) (citing Zaccardi v. Becker, 88 N.J. 245, 253, 440 A.2d 1329 (1982)); see also Jansson v. Farleigh Dickinson University, 198 N.J. Super. 190, 486 A.2d 920 (App.Div. 1985).
The Johnson court stated:
when a plaintiff has violated a discovery rule or a court order[,] the paramount issue is whether a lesser sanction than dismissal would suffice to erase the prejudice suffered by the non-delinquent party. The trial court must first determine the prejudice suffered by each defendant and then determine whether dismissal with prejudice is the only reasonable and just remedy available. If a lesser sanction could erase the prejudice against the the non-delinquent party, dismissal of the complaint with prejudice would not be appropriate and would therefore constitute an abuse of discretion. Johnson v. Mountainside Hosp., Resp. Disease Assoc., supra, 199 N.J. Super. at 120, 488 A.2d 1029.
Another factor to be considered in administering dismissal of the complaint or entry of a default judgment as sanctions for discovery violations is the delinquent party's intent level. "`The dismissal of a party's cause of action, with prejudice, is drastic and is generally not to be invoked except in those cases where the order for discovery goes to the very foundation of the cause of action, ... or where the refusal to comply is deliberate and contumacious....'" Id., at 119, 488 A.2d 1029 (citing Lang v. Morgan's Home Equipment Corp., supra, 6 N.J. at 339, 78 A.2d 705). In Merck & Co., Inc. v. Biorganic Laboratories, Inc., supra, the Appellate Division held that defendants' deliberate frustration of the lower court's oral order directing defendants to produce certain documents, justified the lower court striking defendants' answer and entering a judgment of default as to all defendants. Id., 82 N.J. Super. at 90, 196 A.2d 688.
*262 However, in Nerney v. Garden State Hosp., supra, the court noted that exclusion of testimony regarding the negligently lost evidence was warranted only if the other party would suffer substantial prejudice. The Nerney court concluded:
[T]he issue of substantial prejudice to [defendant] from the loss of the X-rays should be decided only after full consideration of the kind of fracture suffered by plaintiff, the circumstances of the loss of the X-rays, the basis for plaintiff's claim of malpractice against [defendant], the evidence which plaintiff will present in support of that claim and the evidence which he anticipates presenting. Discovery should be completed before the trial court decides the issue of prejudice and, if appropriate, an evidentiary hearing should be held. Id., 229 N.J. Super. at 42, 550 A.2d 1003 (citation omitted).

1) Appropriateness of an evidentiary hearing.
Plaintiffs contend that the issue of prejudice must be developed at an evidentiary hearing before a court can impose discovery sanctions. However, the Nerney court unequivocally stated that an evidentiary hearing is not mandatory. A court must consider whether an evidentiary hearing would be helpful to determine the issue of prejudice to the nondelinquent party. In Johnson v. Mountainside Hosp., Resp. Disease Assoc., supra, the Appellate Division noted that there was a sparse record which was not "wholly informative" as to defendants' prejudice. Id., 199 N.J. Super. at 120, 488 A.2d 1029. Thus, the court remanded the matter for an appropriate hearing for determination of the defendants' prejudice. Id., at 121, 488 A.2d 1029. Similarly, in Nerney v. Garden State Hosp., supra, there was a sparse record as to the issue of prejudice, which included the circumstances surrounding the lost evidence. The Appellate Division remanded the matter, stating that an evidentiary hearing should be held "if appropriate." Id., 229 N.J. Super. at 42, 550 A.2d 1003.
In this case, however, there has been extensive discovery and briefing. Also, this court has reviewed the October 12, 1990 Vallas Report, the August 31, 1990 West Orange Fire Department Fire Incident Report and West Orange Fire Department Fire Incident Report Supplement and extensive documents submitted by counsel. This court heard oral argument on this motion and *263 counsel argued, inter alia, the prejudice issue. Accordingly, an evidentiary hearing is not necessary nor helpful to determine the issue of prejudice in this case. See Kraszewski v. State Farm General Ins. Co., 130 F.R.D. 111 (N.D.Cal. 1984) (delinquent defendants and their counsel were not entitled to an evidentiary hearing before the district court imposed sanctions where there were extensive briefing and hearing opportunities to explain their oppositions to plaintiffs' motions to compel discovery).

2) Discovery.
Plaintiffs also contend that discovery must be completed before a court can impose discovery sanctions. In Nerney v. Garden State Hosp., supra, the court stated that "[d]iscovery should be completed before the trial court decides the issue of prejudice...." Id., 229 N.J. Super. at 42, 550 A.2d 1003. Nerney v. Garden State Hosp., supra, requires only that discovery be completed so as to allow a court to determine the issue of prejudice. A court may require completed discovery as to the intent of the spoliating party where the spoliator's intent is a crucial factor in determining the appropriate sanction to be imposed. Thus, discovery irrelevant to these issues need not be completed before a court imposes sanctions for discovery violations. It would be inefficient and inequitable for a discovery violator to make a nondelinquent party expend more legal fees on discovery irrelevant to the determination of sanction factors.
In this case, discovery is complete so as to allow this court to make a fully informed determination of defendants' prejudice. The circumstances of the Cadillac's loss have been set out in great detail supra.[10]

*264 3) Prejudice to defendants.
The cause of the fire that damaged the Cadillac is central to this case. The findings of the August 31, 1990 West Orange Fire Department Fire Incident Report and The West Orange Fire Department Fire Incident Report Supplement conflict with the findings of the Vallas Report. The Fire Incident Report and Supplement concluded that wire and cable insulation were ignited and that there were no signs of fluid leaks. The Vallas Report concluded that brake fluid from a ruptured brake line ignited as it came into contact with the exhaust manifold.
Plaintiffs' complaint alleges, inter alia, breach of sales and service contracts, defective service and strict products liability. The Vallas Report bears favorably on these allegations. Accordingly, a report prepared at plaintiffs' request with prospective litigation in mind without affording defendants' experts an opportunity to inspect the same best evidence and prepare a defense is substantially prejudicial to defendants.

4) Intent level of the delinquent party.
Dismissal of a plaintiff's complaint may be proper for willful noncompliance with a court order to preserve evidence. See Merck & Co., Inc. v. Biorganic Laboratories, Inc., supra. For the destruction of evidence to be intentional, it need not rise to the level of a malicious or "evil minded act." See Viviano v. CBS, Inc., supra, intent can be inferred "where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action[,]" Fire Ins. Exchange v. Zenith Radio Corp., supra, 747 P.2d at 914 (citations omitted), and fails to do so.
In American Family Ins. Co. v. Village Pontiac GMC, Inc., supra, the Appellate Court held that the "plaintiffs intentionally allowed the most crucial piece of evidence ... to be destroyed. Plaintiffs should have known that potential defendants to a case alleging negligence and products liability would undoubtedly want *265 to inspect, as plaintiffs' experts had done, and test the object alleged to have cause the damage." Id., 166 Ill.Dec. at 96, 585 N.E.2d at 1118.
In Headley v. Chrysler Motor Corp., supra, the court noted:
The term "intentionally" is used here to distinguish the destruction from a destruction without any fault whatsoever on the part of the plaintiffs. The record evidence before this court does not suggest that the destruction was willful in the sense that plaintiffs purposefully destroyed the vehicle with a view towards precluding examination. [¶] More to the point, as used herein, "intentional" means that the vehicle was destroyed by plaintiffs' agent after notice that the vehicle should be retained for evidentiary purposes. Id., at 364, fn. 1 (emphasis original).
In Graves v. Daley, 172 Ill. App.3d 35, 122 Ill.Dec. 420, 526 N.E.2d 679 (1988), "[a]pproximately three to four months after the fire, and after [plaintiffs' insurer's inspector] Miller had prepared his report implicating the furnace, [plaintiffs' insurer] Western States told [plaintiffs] Mr. and Mrs. Graves that they could dispose of the furnace. The Graves followed Western States' direction and destroyed the furnace." Id., 122 Ill.Dec. at 421-22, 526 N.E.2d at 680-81. Suit was filed some five months later. The Appellate Court stated:
The plaintiffs destroyed the furnace after receiving permission to do so from Western States. This is not a case where the evidence was innocently or negligently destroyed. In the instant case the plaintiffs willingly caused the furnace to be destroyed with Western State's [sic] approval. The plaintiffs and Western States had complete control of the furnace from the date of the fire. Id., at 422-23, 526 N.E.2d at 681-82.
In this case, plaintiffs (and State Farm as subrogee) had complete control of the Cadillac. State Farm had the Cadillac inspected and subsequently discarded it. Although plaintiffs' destruction of the Cadillac does not suggest purposeful destruction "with a view towards precluding examination," that destruction was intentional.
However, the spoliating party's state of mind is not essential to determine the proper sanction to be imposed because "a lesser sanction than dismissal would suffice to erase the prejudice suffered by" defendants. Johnson v. Mountainside Hosp., Resp. Disease Assoc., supra, 199 N.J. Super. at 119, 488 A.2d 1029.

*266 5) Sanction erasing defendants' prejudice.
In this case, preclusion of the evidence punishes plaintiffs for their discovery violation and deters future discovery violations. Preclusion of the Vallas Report and any testimony as to the findings and conclusions in that report fully rectifies the prejudice suffered by defendants. Precluding any and all evidence of plaintiffs' inspection places the parties in equipoise. Also, preclusion of the evidence deters future discovery violations because it frustrates a spoliator's efforts to gain an advantage. Accordingly, preclusion of the evidence is the proper sanction, and dismissal of plaintiffs' complaint would amount to an abuse of discretion. Id.; see Broadwell v. Stiles, 8 N.J.L. 71 (Sup.Ct. 1824); Wyckoff v. Wyckoff, 16 N.J. Eq. 401 (Ch. 1863).
In a similar case, American Family Ins. Co. v. Village Pontiac GMC, Inc., supra, exclusion of any and all expert evidence, rather than dismissal, was the appropriate sanction against product liability plaintiffs who destroyed an allegedly defective automobile before defendants could inspect it. See also Headley v. Chrysler Motor Corp., supra.

c. Conclusion.
In this case, discovery is complete as to the circumstances surrounding the spoliation of the Cadillac and the prejudice to defendants resulting from plaintiffs' spoliation. An evidentiary hearing is not necessary nor helpful to determine the appropriate sanction in light of the oral argument, extensive discovery and submitted documents. The appropriate sanction in this case is preclusion of the evidence under R. 4:23-2(b)(2) because it fully redeems plaintiffs' precomplaint activity.
Defendants contend that dismissal is the proper sanction in this matter. In support of this contention, defendants cite various authorities. However, those authorities precluded the "fruit of the spoliated tree" and subsequently granted summary judgment in favor of the nonspoliator. See American Family Ins. Co. v. Village Pontiac GMC, Inc., supra; Headley v. Chrysler Motor *267 Corp., supra; Fire Ins. Exchange v. Zenith Radio Corp., supra; but see Graves v. Daley, supra (dismissal of lawsuit for willful destruction of crucial evidence). Accordingly, upon completed discovery as to any summary judgment issues, defendants may move for summary judgment and any counsel fees and costs they may be entitled to for this motion under the current N.J. Court Rules.

VI. Disposition
Defendants' motion for dismissal of plaintiff's complaint based on spoliation of evidence is denied. However, the circumstances of this case dictate preclusion of all evidence regarding plaintiffs' inspection of the Cadillac for the purposes of trial and summary judgment.

VII. Order
IT IS THEREFORE
ORDERED THAT plaintiffs (and State Farm as subrogee) are precluded from introducing any and all expert evidence regarding their inspection of the Cadillac for the purposes of trial and summary judgment.
NOTES
[1] See Cal.Penal Code § 135 (West 1970) (spoliation constitutes a misdemeanor).
[2] CBS had been dismissed from the personal injury suit. Accordingly, it is appropriate to assume that a separate action may be brought against a third party for fraudulent concealment of evidence. See id.
[3] The Smith court, in turn, relied on Williams v. State of California, 34 Cal.3d 18, 192 Cal. Rptr. 233, 664 P.2d 137 (1983) to reach its decision. See Smith v. Superior Court, supra.
[4] Note also that the language of Fed.R.Civ.P. 34 suggests that a party's written response to a request for inspection, stating that the documents are nonexistent, frees that party to destroy documents before entry of a court order to preserve or produce them. Id.
[5] A court's authority to impose rule 37 sanctions is derived from two sources. "One, intimated in [Bowmar Instrument Corp. v. Texas Instruments, Inc., supra], involves a bit of procedural chicanery, and the second, used by the special master in [William T. Thompson Co. v. General Nutrition Corp., supra] relies on a court's `inherent power' to control its proceedings." Oesterle, supra, at 1224.

Citing to Societe Internationale v. Rogers, 25 Fed.R.Serv.2d 423, 427 (N.D.Ind. 1977) (citing Societe Internationale v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)), the Bowmar Court implied that a court can enter an order compelling discovery although the documents have already been destroyed. See Oesterle, supra, at 1224. "The weak link, of course, is the court's power to compel someone to perform an impossible task in order to set up the rule's provisions on sanctions." Id., at 1224-25.
[6] In County of Solano v. Delancy, supra, the court stated that "if [Smith v. Superior Court, supra,] had undertaken to list the elements of [intentional spoliation of evidence], we do not believe that the list would have included an agreement on the part of the defendant." Id., 264 Cal. Rptr. at 729.
[7] In American Family Ins. Co. v. Village Pontiac GMC, Inc., supra, plaintiff telephoned defendant Village Pontiac and told them that the car caused the fire. In that case, the fire originated in the automobile and spread to the house. However, in that case as well as this case, the cause of the fire was undetermined before the inspection.
[8] New Jersey's obstruction of justice statute, N.J.S.A. 2C:29-3, provides in pertinent part:

a. A person commits an offense if, with purpose to hinder the apprehension, prosecution, conviction or punishment of another for an offense he:
(3) Suppresses, by way of concealment or destruction any evidence of the crime ... which might aid in the discovery or apprehension of such person or in the lodging of a charge against him; . ..
b. A person commits an offense if, with purpose to hinder his own apprehension, prosecution, conviction or punishment, he:
(1) Suppresses, by way of concealment or destruction any evidence of the crime ... which might aid in his discovery or apprehension or in the lodging of a charge against him; ...
[9] "Although frequently labeled inconsistently, courts generally have treated presumptions as either vanishing, rebuttable, or irrebuttable in nature." Laurie S. Longinotti, Comment, Evidence  Welsh v. United States: Negligent Spoliation of Evidence: The Creation of a Rebuttable Presumption, 19 Mem.St.U.L.Rev. 229, 231 (1989).
[10] In General Motors' reply, General Motors states that "[a]s of January 29, 1993, this defendant has provided plaintiff's counsel in addition to verified responses to an initial set of interrogatories, answers to plaintiff's first set of interrogatories, answers to plaintiff's first set of supplemental interrogatories and answers to plaintiff's second set of supplemental interrogatories as well as more specific answers to plaintiff's initial interrogatories."